LEASK et al. v. HOAGLAND et al.

(Supreme Court, Appellate Division, First Department.　April 7, 1911.)

1. GIFTS (§ 47*)—EVIDENCE—PRESUMPTIONS.

The law will not presume a gift, if any other presumption is open; and unexplained payments, not made on consideration of an antecedent debt, will be presumed to have been loans, rather than gifts.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 81–86; Dec Dig. § 47.*]

2. EVIDENCE (§ 165*)—CHECKS—SECONDARY EVIDENCE.

Under the rule that entries and memoranda made by persons, since deceased, in the ordinary course of business, are competent secondary evidence of the facts contained in them, where they had no interest to misrepresent or mistake them, stubs or counterfoils of checks, stating the amount, date, and name of the payee of each check, all of which stubs were in the handwriting of the drawer's bookkeeper, and whose handwriting, he being dead, was satisfactorily proven, were legal evidence of the making of corresponding checks.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 548–555; Dec. Dig. § 165.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by George Leask and others, as executors of the last will and testament of Hudson Hoagland, deceased, against Charles F. Hoagland and others.　Judgment for plaintiffs, and certain defendants appeal.　Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

W. C. Carroll, for appellants.

J. Hampden Dougherty, for respondents.

SCOTT, J.　Appeal by certain defendants from a judgment in favor of plaintiffs upon a second trial of the action; a former judgment, also in plaintiff's favor, having been reversed.　136 App. Div. 658, 121 N. Y. Supp. 197.

The plaintiffs are the executors of the last will and testament of Hudson Hoagland, deceased, and the appellants are assignees of Charles F. Hoagland, who was a nephew of one of the residuary legatees mentioned and provided for in the residuary clause of the said will.　The purpose of the action is to determine the amount of the indebtedness of said Charles F. Hoagland to said Hudson Hoagland on the date of the death of the latter, and to establish plaintiffs' right to offset such indebtedness, when ascertained, against the share or interest of said Charles F. Hoagland in said residuary estate.

The indebtedness which plaintiffs claim to be entitled to offset is evidenced, as they allege, by a promissory note for $10,000, dated March 1, 1901, made by Charles F. Hoagland to the order of Hudson Hoagland, payable one day after date, and by certain checks, drawn at different dates and for various amounts, aggregating $5,108.45, drawn by Hudson Hoagland to the order of Charles F. Hoagland,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and indorsed by him. No objection is made, or could well be made, to the allowance as an offset of the indebtedness represented by the note of $10,000, with the appropriate interest thereon; and the controversy turns upon the allowance, as of an indebtedness, of the sum represented by the checks given to Charles F. Hoagland after the day upon which the note is dated. There is but little evidence in the case, except that which is documentary; for Charles F. Hoagland's mouth was closed respecting any personal transactions with his uncle. We are therefore compelled to fall back in the main upon the presumptions to be drawn from the documents.

The appellants contend that, in the absence of any direct proof, the presumption is that the checks were given in payment of an antecedent debt from Hudson Hoagland to Charles F. Hoagland (Nay v. Curley, 113 N. Y. 575, 21 N. E. 698), or, if not, that they were given as gifts to aid a needy relative. The plaintiffs, on the other hand, insist that the circumstances of the parties necessarily rebut the presumption that Hudson Hoagland was indebted to his nephew, and gave the checks in payment of such indebtedness, and that all the circumstances rebut the presumption that the checks represent gifts, and point convincingly to the conclusion that they represent loans.

[1] They rely in part upon the rule that the law will not presume a gift, if any other presumption is open (Grey v. Grey, 47 N. Y. 552), and also upon the course of business between the uncle and nephew, which, as they say, establishes the fact that the uncle was in the habit of making loans to the nephew. The improbability that these checks were given in payment of a debt is fully established by the evidence, and was stated with much clearness and force by the learned justice who presided at the first trial of this action (64 Misc. Rep. 156, 118 N. Y. Supp. 1035); and the learned justice who presided at the second trial arrived at the same conclusion. It is not necessary to repeat the argument here.

This leaves open for discussion the question whether the checks are to be presumed to have been given as a loan or as a gift. In support of their contention that they must be taken as having been given by way of loan, the plaintiffs in addition to insisting that the law will presume a loan rather than a gift when there is no evidence either way, undertake to show that the note for $10,000 was given to represent prior loans, representing that sum or very near it, which Hudson Hoagland had made to his nephew, by giving him checks from time to time and for various amounts. To sustain this theory they undertake to show that from time to time, commencing on January 30, 1899, and ending on March 1, 1901 (the date of the note), Hudson Hoagland had given checks aggregating $9,900 to Charles F. Hoagland; the last check, that of March 1, 1901, being for $6,100. They insist that, in the absence of any other discoverable consideration for the note, these checks must be deemed to have constituted its consideration; and hence they argue that a course of dealing has been established between Hudson Hoagland and his nephew which indicates that when the former gave checks to the latter they represented loans, and not gifts. This, as they insist, strengthens the legal presumption upon which they also rely.

[2] In our opinion there is much force in this argument, if it can be said that there was competent proof that Hudson Hoagland did give to his nephew the checks which are said to have constituted the consideration for the note. The checks themselves were not produced; but the plaintiffs did produce stubs or counterfoils, stating the amount, date, and name of the payee of each check. The question is whether these were legal evidence of the making of corresponding checks. We think that they were. All the stubs, as well as all of the checks respresenting later payments, were in the handwriting of one George A. Aitken, who was Hudson Hoagland's bookkeeper and confidential clerk. He kept all of Hoagland's books of account, including his check book. He is dead, but his handwriting was satisfactorily proven. It is a well-known custom of business men to inscribe upon the stub or counterfoil of each check issued a note of its date, amount, and the name of the payee, with, not infrequently, a memorandum of the purpose for which it is issued. We think that the entries made by Aitken upon the stubs or counterfoils were competent evidence that on the days indicated Hudson Hoagland drew checks for the amounts specified to the order of Charles F. Hoagland, from which would follow the presumption that on these days Hudson Hoagland paid Charles F. Hoagland these amounts. This is in pursuance of the well-established rule that entries and memoranda, made by persons since deceased, in the ordinary course of professional and official employment, are competent secondary evidence of the facts contained in them, where they had no interest to misrepresent or misstate them. Livingston v. Arnoux, 56 N. Y. 512.

We think therefore that the inference may fairly be drawn that it had been the habit of Hudson Hoagland, prior to March 1, 1901, to pay to his nephew from time to time sums of money, which were given by way of loans, and not as gifts. This fact strengthens, or, at the least, does not weaken, the presumption which the law would draw that unexplained payments, not made upon consideration of an antecedent debt, will be presumed to have been loans, rather than gifts.

It follows that the judgment appealed from must be affirmed, with costs.

CLARKE and MILLER, JJ., concur.

INGRAHAM, P. J. (dissenting). As stated by Judge Andrews in Nay v. Curley, 113 N. Y. 575, 21 N. E. 698:

"It is undoubtedly the general rule that, in the absence of explanation, the presumption arising from the delivery of a check is that it was delivered in payment of a debt, and not as a loan. * * * But a check may represent a loan or a gift, or money of the drawer, to be applied by the drawee to the use of the former, as his agent or otherwise."

Starting from this general rule, I do not think that the evidence justified an inference that the checks in question represented loans for which the payee of the checks was liable to the testator. In the first place, I think the stubs of the checks were not competent evidence to prove the intention of the testator when the checks were given, or the character of the transaction represented by them. It was not shown

that the person making the entries had any knowledge of the relations between the testator and his nephew, or that he did more than write out the checks; and his characterization of the intention of the testator, so far as appears, created no inference as to the nature of the transaction, and certainly was no evidence as to the actual transaction between the testator and his nephew. Eliminating this testimony, we have the fact that on March 1, 1901, the testator gave to his nephew one sum of $6,100, and at the same time took from him a note for $10,000, and as to the amount of that note the nephew has been held responsible. The testator subsequently paid to his nephew, by checks which were introduced in evidence, various sums of money representing the amount now in controversy; but the case, it seems to me, is entirely devoid of any evidence to show that these checks were not given either as a gift or money of the testator to be applied by his nephew for the use of the testator. The fact that the nephew was impecunious, and that the testator had, prior to March 1, 1901, assisted him by loaning him money, does not justify an inference that the moneys subsequently advanced were loans; and the fact that the testator took a note for the money that represented loans, and did not ask for or receive a note for the subsequent payments, would seem to justify an inference that they were not intended as loans or advancements.

I do not think, therefore, that the judgment was sustained by the evidence, and therefore it should be reversed.

LAUGHLIN, J., concurs.