HENRY D. SAYER, as Industrial Commissioner of the State of New York, Respondent, v. GERARDUS M. WYNKOOP, Appellant.

**Money had and received — principal and agent — trust — intention of owner controlling on question whether title to moneys has been transferred and a trust created — checks sent to insurance broker for payment of premiums due on policy in State Insurance Fund — moneys received by broker either as trustee or agent — State may recover same in action for money had and received.**

1. The intention of the owner, and not that of the receiver, is controlling upon the question whether title to moneys has been transferred and a trust has been created. There must be an assumption of the trust duty by the receiver, but that may arise through implication as well as through expression. No particular form of words is required

either to create the trust or to indicate that a trust duty has been assumed.

2. Where a bill against an insolvent corporation for premiums past due the State Insurance Fund and unpaid was sent to defendant who, as insurance broker, had obtained for the corporation insurance in the State Insurance Fund against liability under the W orkmen's Compensation Law, and defendant wrote the receivers of the insolvent corporation stating he had received the bill; that the State claimed a preference and that if they would give assurances that the bill would be satisfied better rates of insurance could be obtained during operation by the receivers, whereupon the receivers, having applied for and obtained permission of the court, sent defendant five checks payable to defendant under his business name each bearing on its face a statement to the effect that it was on account of the indebtedness to the State Insurance Fund and was payable only when the receipt on the reverse side was dated and signed by the payee which receipt read " Received * * * the amount shown on face of this voucher in full of account as stated thereon," and defendant indorsed each check as required and received the proceeds, it must be held that it was the intention of the drawers of the checks to transfer an irrevocable title to the moneys paid and the intention of the defendant to receive the moneys either as trustee or agent of the State Insurance Fund. And it must also be so held as to a check sent by the corporation before insolvency on account of " Earned Premium, Policy of State Fund No. 22878-B, subject to final checking," bearing the same statement upon the face as to the receipt to be signed as appeared upon the receiver's checks and a similar receipt on the back. The State, therefore, in an action for money had and received, was entitled to recover the sums paid to the defendant.

*Sayer* v. *Wynkoop*, 220 App. Div. 761, affirmed.

(Argued April 5, 1928; decided May 1, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 3, 1927, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*Daniel Mungall* and *Kenneth K. MacKenzie* for appellant. Plaintiff has no cause of action against the defendant. (*Erb* v. *Banco Di Napoli*, 243 N. Y. 45; *Montgomery* v. *Albany City Bank*, 7 N. Y. 459; *Hall* v.

*Lauderdale,* 46 N. Y. 70; *Ætna Nat. Bank* v. *Fourth Nat. Bank,* 46 N. Y. 82; *Bulger* v. *Rosa,* 119 N. Y. 459; *McDonald* v. *Met. St. Ry. Co.,* 167 N. Y. 66.)

*Albert Ottinger, Attorney-General (Cornelius J. Sullivan* of counsel), for respondent. The court properly directed a verdict in plaintiff's favor. (*Lawrence* v. *Fox,* 20 N. Y. 268; *Seaver* v. *Ransom,* 224 N. Y. 233; *Vrooman* v. *Turner,* 69 N. Y. 280; *Fosmire* v. *Nat. Surety Co.,* 229 N. Y. 44). The plaintiff's judgment can also be sustained on the theory of money had and received. (*Roberts* v. *Ely,* 113 N. Y. 128; *Title Guarantee & Trust Co.* v. *Haven,* 214 N. Y. 468.)

KELLOGG, J. The defendant, Gerardus M. Wynkoop, conducted business as an insurance broker under the name of Wynkoop Service. On August 16th, 1916, the defendant, acting for a corporation known as Metropolitan By-Products Company, Inc., obtained a policy of insurance in the State Insurance Fund, insuring the company against liability under the Workmen's Compensation Law. On October 24th, 1916, the defendant received a check for $1,000 from the By-Products Company on account of premiums due upon the policy and remitted the same to the State Fund. On April 19th, 1917, the defendant received a further check for $2,926.60 from the By-Products Company on account of premiums due. This amount was never remitted to the State Fund. The By-Products Company became bankrupt and upon the 19th day of November, 1917, receivers were appointed, in bankruptcy proceedings, to take over its assets. At this time there was owing to the State Fund by the By-Products Company the sum of $22,740.41. The receivers employed the defendant to continue the insurance. Thereafter between January 29th, 1918, and May 15th, 1918, the receivers of the By-Products Company sent five checks aggregating $10,500, payable to "Wyn-

koop Company " or " Wynkoop Service," to the defendant on account of premiums due the State Fund. The defendant indorsed the checks and received the proceeds thereof. No part of the moneys thus received was paid over to the Fund. Accordingly, this action was brought by the Industrial Commissioner to recover the sum of $13,426.60, which had thus been paid to the defendant on account of premiums and which the defendant had neglected and refused to remit to the State Fund. It having appeared upon the trial that the defendant had paid one hundred dollars of the total sum thus collected and retained, a verdict for $13,326.60, with interest, was directed for the plaintiff, and the plaintiff had judgment for that amount.

It is obvious that a person, who delivers property or moneys to another with instructions to pay them to a third person, may intend, upon the one hand, to make the receiver a mere custodian or agent for himself; or, upon the other, to constitute him a trustee for the third person. If the former intention be his, the third person will have no right of action to recover the moneys; if the latter be his intention, a cause of action for money had and received will arise against the receiver of the moneys and in favor of such third person. It will thus arise, not because of the express promise of the receiver to pay, but because of property rights acquired by the third person, to enforce which the law will imply a promise on the part of the receiver to pay over. (Williston on Contracts, sections 348, 349; *National Bank* v. *Grand Lodge,* 98 U. S. 123; *Mellen* v. *Whipple,* 67 Mass. 317.) " In such a case it is held that the third person may sue in his own name. But then the suit is founded rather on the implied undertaking the law raises from the possession of the assets, than on the express promise." (Per Mr. Justice STRONG in *National Bank* v. *Grand Lodge, supra.*) Moreover, a third situation may arise. The receiver of the moneys may be, or pretend to be,

the agent of the third person, to receive them. In that event, when the moneys are received, the legal as well as the equitable title thereto will pass to the third person, who may then bring suit to recover the amount paid. (Williston on Contracts, sec. 352.) These general principles are well settled and readily understood. Difficulty arises only when application of the principles to a given state of facts is sought to be made.

Manifestly, if the owner of moneys employs another as a mere messenger to carry them to a designated consignee, no trust is created and no right of action accrues. (*Bigelow* v. *Davis*, 16 Barbour, 561.) Again, the owner may deposit the moneys with a banker with instructions to apply them in satisfaction of the debt of a third person. In that event, the conventional relationship of debtor and creditor between the banker and the depositor is created, coupled with an agency on the part of the banker to pay the debt, which is revocable at the will of the depositor. (*Ætna National Bank* v. *Fourth National Bank*, 46 N. Y. 82; *Erb* v. *Banco di Napoli*, 243 N. Y. 45.) Where, however, the owner delivers the moneys to another upon an agreement that they will be paid to a third person, such third person acquires an equitable interest entitling him to have a recovery in an action for money had and received. (*Miller* v. *Billingsly*, 41 Ind. 489; *Sweeney* v. *Houston*, 243 Penn. St. 542; *Johnson* v. *Collins*, 14 Iowa, 63; *Goodwin* v. *Bowden*, 54 Me. 424; *White* v. *Hunt*, 64 N. C. 496; *Rogers Locomotive Works* v. *Kelley*, 88 N. Y. 235; *Gilman* v. *McArdle*, 99 N. Y. 451; *Matter of Carpenter*, 131 N. Y. 86.)

In *Rogers Locomotive Works* v. *Kelley* (*supra*) moneys were deposited by a corporation with a firm of bankers with instructions to apply them in payment of interest coupons falling due on the bonds of another corporation, the payment of which had been assumed by the depositor. The depositor took from the bankers a receipt acknowledging the deposit of the moneys " in trust " to

1928.]          Opinion, per KELLOGG, J.        [248 N. Y. 54]

apply the same to pay the coupons. It was held by the court that there was an absolute and irrevocable appropriation of the moneys to the payment of the coupons; that the depositor retained no interest; that the bankers became trustees of the fund for the benefit of the bondholders. In *Matter of Carpenter* (*supra*) an owner delivered certain overdue promissory notes to another person upon the promise of that person that he would collect the same and pay the proceeds to the petitioner. It was held that a trust in favor of the petitioner was created.

In all these cases permitting a recovery by the third person there appears to have been an express promise on the part of the person receiving the moneys to pay them over, or an acknowledgment by him that the moneys were received to be held in trust for such third person. However, it is apparent that the intention of the owner, and not that of the receiver, is controlling upon the question whether title to the moneys has been transferred and a trust has been created. True, there must be an assumption of the trust duty by the receiver, but that may arise through implication as well as through expression. No particular form of words is required either to create the trust or to indicate that a trust duty has been assumed. " To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created." (ANDREWS, J., in *Beaver* v. *Beaver*, 117 N. Y. 421, at p. 428.) " Of course particular words, and least of all the specific word ' trust,' are not necessary to create a trust." (HISCOCK, J., in *Title Guarantee & Trust Co.* v. *Haven*, 214 N. Y. 468, at p. 481.) In *McKee* v. *Lamon* (159 U. S. 317, at p. 322) the court said: " There can be no doubt of the general proposition that where money is placed in the hands of one person to be delivered to another, a trust arises in favor of the latter, which he may enforce by bill in equity, if not by action at law.

The acceptance of the money with notice of its ultimate destination is sufficient to create a duty on the part of the bailee to devote it to the purposes intended by the bailor."

The case of *Hall* v. *Marston* (17 Mass. 574) is very much in point. Bradford was the debtor of the defendant Marston in the sum of $1,300 and of the plaintiff Hall in the sum of $400. While in Europe, Bradford remitted to Marston a bill of exchange for $1,000, with instructions to pay to Hall $200 and apply the balance upon his own debt. Marston received the moneys upon the bill of exchange but refused to make payment to Hall. It was held that Hall, in an action for money had and received, might recover the sum of $200 from Marston. The court said: " But the silence of the defendant, and his receiving the contents of the bill, must be construed to be an assent to pursue his instructions, and to receive the money for Hall as well as for himself, so that when it was paid him, 200 dollars was legally Hall's money, and was afterwards improperly converted by the defendant to his own use." Under these authorities, if the Metropolitan By-Products Company and the receivers in bankruptcy of that company paid the moneys to the defendant with an intent to transfer title thereto, either to the defendant as trustee for the State Fund, or directly to the State Fund as the principal of the defendant, the plaintiff has a right of action to recover the moneys paid.

In detail, the facts in relation to the payment of $10,500 to the defendant by the receivers of the Metropolitan By-Products Company were as follows:

The State Insurance Fund sent to the defendant a bill against the Metropolitan By-Products Company for $22,740.41 on account of premiums past due and unpaid. Upon its receipt on December 5th, 1917, the defendant wrote the receivers of the By-Products Company, stating that he had received the bill and that he was informed by the State Insurance Fund " that it claims preference in

1928.]        Opinion, per KELLOGG, J.        [248 N. Y. 54]

payment." The bill was attached to the letter. The defendant also stated that he had previously obtained a low premium rate for the insurance taken out by the By-Products Company; that if he was compelled to negotiate new insurance to cover the operation of the receivers he would be required to pay a rate several times greater; that " if assurances can be given that payments will be made by the receivers from time to time until the amount due for back payments is paid," a substantial saving in future premiums could be made.

It will be observed that the State Insurance Fund informed the defendant that it claimed a preference upon its bill rendered. From this fact it must be concluded that the State Insurance Fund was well aware of the bankruptcy of the By-Products Company. Such being the case, it could not have intended to appeal to the defendant as an agent for the bankrupt company. All the assets of the company were possessed by its receivers in bankruptcy and to them alone could any appeal be successfully made. Its purpose in sending the bill to the defendant, with a statement of its claim to a preference, clearly must have been to procure the aid of the defendant in obtaining payment from the receivers. The defendant evidently considered that his aid had thus been requested, for at once he wrote the receivers, attaching the bill received, stating that the State Fund regarded itself as entitled to a preference upon the claim therein made, and asserting that if they would give " assurances " that the bill would be satisfied, better rates of insurance might in future be had. The whole tone of the letter indicates that the defendant intended thereby to solicit for the State Insurance Fund the payment of its claim.

On December 20th, 1917, the receivers petitioned the Federal court, attaching to their petition the letter of the defendant with the bill of the State Fund against the By-Products Company thereto attached. They asserted that they could secure better rates if they were permitted

to make payments from time to time of back premiums until the whole were paid, and asked for an order permitting this to be done. On the 26th day of December, 1917, the District Court made an order to the effect that " payment of the indebtedness due and owing by Metropolitan By-Products Company, Inc., for premiums on Workmen's Compensation Insurance in the State Fund of the State of New York * * * is a necessary and proper expense of the Receivers " and directing that the receivers be authorized to make the payments.

The receivers thereafter drew and remitted to the defendant five checks payable to the defendant under the name of " Wynkoop Company " or " Wynkoop Service." The first check, for $1,500, bears on its face the statement "Acct. Compensation Insurance Accd. Comp. Ins.;" the second, for $1,500, the statement " a /c Compensation Insurance;" the third, for $3,000, the statement " On account of indebtedness to State Insurance Fund to November 19, 1917;" the fourth, for $3,000, the statement " On account of State Fund Ins.;" the fifth, for $1,500, the statement " Premium on account State Insurance Fund." Each check, on its face, in print or in writing, bore this identical statement: " The receipt on the reverse side of this voucher must be dated and signed by the person or firm in whose name it is drawn to render it payable by the bank or there must be attached the authority for any substitution." On the reverse side of each check, in print or writing, appeared the following: " Received............191　of G. M. Moffett & C. R. Van Etten, Receivers of Metropolitan By-Products Co., Inc., the amount shown on face of this voucher in full of account as stated thereon." In the case of every check the name of the payee therein, Wynkoop Company or Wynkoop Service, was written by the defendant beneath the printed or written receipt.

The purpose of the receivers in remitting the checks is plain to be seen. They were sent to the defendant in

payment of a debt to the State. The defendant, the payee, in every instance was required to acknowledge the receipt of the moneys; to acknowledge that by his receipt of the moneys upon the checks the State Fund itself *pro tanto* received satisfaction of its own . The defendant signed the receipts which were exacted and there made the acknowledgments requested. From these is the intention of the receivers to transfer an irrevocable title to the moneys paid, and the intention of the defendant to receive the moneys, either as trustee or agent for the State Insurance Fund, is made perfectly manifest.

Further proof appears to indicate the intent of the defendant to receive the moneys on behalf of the State Fund. On the 10th day of December, 1918, several months after the checks had been received, the defendant filed a petition in the Federal court for the purpose of obtaining an order directing the receivers to make further payments upon the indebtedness to the State Fund. In the petition he stated that he had received a bill for premiums rendered by the State Insurance Fund. In regard to the bill he said: " The bill amounts to the sum of $45,067.01, but there is only due thereon the sum of $34,567.01 because of the fact that the sum of $10,500.00 has been paid on account." Thus does he represent that the previous payments by checks of the sum of $10,500 to himself were in fact payments to the State. In regard to the proceedings which followed the filing of the petition he was asked this question: " In the United States Court proceedings were you acting for yourself alone or were you acting for yourself and the State Fund? " He answered: " The State Fund and the Attorney-General both requested me to proceed, through a common counsel."

In reference to the payment of $2,926.60, made by the Metropolitan By-Products Company, Inc., to the defendant under the name of the Wynkoop Company, less is known concerning the intention of the drawer and payee

of the check than has been disclosed in reference to the payments made by the checks of the receivers.   However, it appears upon the face of the check that it was drawn on account of "Earned Premium, Policy of State Fund No. 22878-B, subject to final checking."   The same statement appears upon the face of the check, as to the receipt which is required to be signed, as appeared upon each of the receivers' checks.   Likewise, a similar receipt appears upon the back of the check.   We think that sufficient is disclosed to indicate that the drawer of the check intended to transfer irrevocable title to the moneys drawn, and that the payee, the defendant, intended to receive the moneys as trustee or agent for the State Insurance Fund.

On the whole case, therefore, we think the State, in this action for money had and received, was entitled to recover the sums paid to the defendant, and the judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, ANDREWS, LEHMAN and O'BRIEN, JJ., concur.

Judgment affirmed.