In re ASSOCIATED GAS & ELECTRIC CO.

CLARKE v. NEW YORK TRUST CO. et al.

No. 303.

Circuit Court of Appeals, Second Circuit.

Aug. 9, 1943.

Stanley Clarke, of New York City (Samuel J. Silverman and James R. Flynn, both of New York City, of counsel), for appellant.

Humes, Buck, Smith & Stowell, of New York City (Irwin L. Tappen, of New York City, of counsel), for New York Trust Company as Trustee, appellee.

Stephen B. Vreeland, of New York City, for Pennsylvania Co. for Insurances on Lives and Granting Annuities, appellee.

Jack Lewis Kraus, II, of New York City (William L. Grossman, of New York City, of counsel), for General Protective Committee, appellee.

Franklin S. Wood, of New York City (Clarence Fried, of New York City, of counsel), for Howard Vredenburgh, etc., appellee.

Before SWAN, CHASE and CLARK, Circuit Judges.

608

SWAN, Circuit Judge.

Associated Gas and Electric Company, hereafter called the Company, filed a voluntary petition for reorganization on January 10, 1940. On that date there existed undisbursed balances of funds which the Company had previously transmitted to Transfer and Paying Agency (called Trapa), `Irving Trust Company and Chase National Bank, respectively, to be used to pay obligations of the Company maturing before January 10, 1940. The trustee in reorganization claims these balances as general assets of the Company's estate and has appealed from portions of an order of the district court holding them to be trust funds for the benefit of the holders of matured but uncollected securities, interest coupons and checks payable before January 10, 1940.

This case was tried below together with a similar litigation instituted by the trustees in reorganization of Associated Gas and Electric Corporation, and the district judge decided both cases in a single opinion. Our opinion in the appeal involving the Corporation is filed herewith.

█ The two appeals raise similar issues on substantially similar facts with respect to the main part of the Trapa funds, and what we said in the other opinion requires a modification of the order now before us in so far as the decision herein was rested on the trust letters of November 8, 1934,[1] and the doctrine of "continuing intention." Further discussion, however, is required as to one item of the undisbursed funds received by Trapa from the Company.

█ This item is a sum of $59,450, which is the balance of some $1,800,000 transmitted to Trapa for payment of the principal of such of the Company's 5½% Convertible Investment Certificates due November 15, 1938 as were not extended prior to that date. These funds were transmitted by checks drawn by the Company to the order of "Transfer and Paying Agency, Coupon Account." The first check was accompanied by a letter dated July 18, 1938. The letter stated that the accompanying check for $33,500 was deposited with Trapa "as paying agent" and that before the maturity of the Certificates additional funds would be deposited for the purpose of paying them. It went on to say that the Company was offering holders of the Certificates an opportunity to extend them and if such extensions were made Trapa would be advised, "and if the amount of funds held by you at such time is sufficient to pay the principal of all the outstanding unextended 5½% Investment Certificates, you agree at our request to return to us such amount of said funds as will equal the principal of the 5½% Investment Certificates with respect to the extension of which we have advised you." Another paragraph of the letter exacted a similar agreement from Trapa with respect to returning to the Company the principal amount of unextended Certificates which the Company might reacquire and present to Trapa, if at the time of such reacquisition the funds held by Trapa were sufficient to pay all the outstanding unextended certificates. The district court was of opinion that this letter indicated the Company's intention to part with control over the funds for redemption of the unextended Certificates, except for the reservation expressly made, and to impress a trust upon them. It is true that if Trapa was to be merely a paying agent no such reservation as the latter expressed was needed, since the Company could require its agent to return on demand any of the funds not previously disbursed. On the other hand, the transaction was unusual in that the amount required for redemption could not be accurately figured, because the number of Certificates which might be extended or reacquired by the Company was unknown; hence it was perhaps not unnatural to refer to these matters explicitly, particularly since the Company's right to solicit extensions was being questioned by the Securities and Exchange Commission. But however the July letter should be interpreted if it stood alone, we think in the light of later correspondence that it cannot be construed as intended to impress a trust upon the funds deposited for redemption of the Certificates. The letter of September 27, 1938, assumed to modify the July agreement by eliminating the condition upon which Trapa was to return the principal amount of Certificates reacquired by the Company; and in the letter of October 14, 1938 the Company asserted the right to receive back on demand prior to the maturity date, November 15, 1938, all of the fund representing

---

[1] On November 8, 1934 the Company wrote letters addressed to Traco, Trapa's predecessor, which were substantially the same as the Corporation's letters of the same date discussed in the other opinion.

the principal of unextended certificates, even though they had not been reacquired by the Company. Trapa endorsed both letters to signify its agreement to these modifications of the July arrangement. These letters, particularly the one of October 14th, are utterly inconsistent with the theory that the Company had parted irrevocably with control of the redemption funds transmitted to Trapa. The district court stresses the fact that the Company never acted under the October letter by making any withdrawal before or after November 15th, but on the contrary deposited an additional sum of $3,586.91 on December 30, 1938. But we cannot see that these circumstances detract from the evidentiary effect of the October letter. The fact that both the Company and Trapa thought they had the right to make such a modification of the July arrangement indicates clearly that they believed Trapa's relations with respect to the redemption funds were those of a paying agent not those of a trustee. Moreover, the redemption funds were not separately segregated but were deposited in the coupon account, upon which Trapa at times drew checks to pay interest coupons and the 7% Scrip before money for the making of such payments had been supplied by the Company. Such intermingling and indiscriminate use of funds in the coupon account is not consistent with the trust status ascribed to part of them.

For the foregoing reasons we conclude that the undisbursed funds held by Trapa and involved in this appeal must be regarded as general assets of the Company.

■ The funds transmitted to Irving Trust Company were to be used to pay the principal amount of extended 5½% Convertible Investment Certificates which were to mature under the extension on November 15, 1939. Irving Trust Company was the Registrar of the issue; there was no indenture trustee. On August 30, 1939, the Company's directors designated the office of the Registrar "as the office or agency of the Company" where the principal of the Certificates should be paid, and shortly before the maturity date the Company sent a check for $273,910, the exact amount necessary to meet the maturing Certificates. The check was drawn to the order of "Irving Trust Company as Trustee" and was endorsed by it in that form. Disbursement of the fund was made by checks of the Irving Trust Company, issued through its Trust Department, to hold-

ers of Certificates who presented them for payment. The amount remaining in the account on January 10, 1940, representing Certificates that had not been presented, was $57,030. The district court held this to be a trust fund. We have nothing to add to his opinion, and think his ruling sustainable under such decisions as Steel Cities Chemical Co. v. Virginia-Carolina Chemical Co., 2 Cir., 7 F.2d 280; Rogers Locomotive & Machine Works v. Kelly, 88 N.Y. 234. Although the use of the words "as trustee" is not conclusive proof of an intention to create a trust, the district court was of opinion that none of the attending circumstances contradicted the trust intention thus expressed and we agree.

The third fund involved in this appeal is a balance of $17,910.17 in an account in the Chase National Bank entitled "Associated Gas and Electric Company, Dividend Account No. 1." No claimant, other than the trustee in reorganization, to any part of this fund appeared in the district court or in this court. This is readily understandable when it is noted that the number of checks outstanding against the account is 5,175, of which only 111 call for $25 or more; these 111 checks total $5,-689.56. The account was opened in April 1927. Checks drawn upon it were signed by the Company's officers. It was the Company's practice at times to withdraw from the account an amount representing uncashed checks outstanding for six months or more and to deposit such withdrawals in the Company's general bank account. When old checks were later presented, sums were deposited to replenish the account to that extent. Millions of dollars passed through the account but by August 1932 it had become inactive and had a balance of less than $400. On October 31, 1934, while an involuntary 77B proceeding, 11 U.S.C.A. § 207, was pending, the Company deposited in the account the sum of $21,157.03, which was the balance shown by its books in the "Reserve for unpaid dividend and interest checks." Later, in March 1935, a list of outstanding unpaid checks was prepared and the balance in the account was adjusted to equal the total of such list, namely, $21,334.17. The list proved not to be complete; unlisted checks were presented from time to time and were paid from the account. The district court's opinion states that practically all the money in the account represents outstanding checks for dividends on capital stock, ei-

ther of the Company or its subsidiaries. By a supplemental finding the court found that some of the outstanding checks on the account are for interest while others are for dividends and that the proportion of the deposits and of the outstanding checks that is for interest and the proportion that is for dividends is unknown.

Where a corporation has not only declared a dividend but has specifically set apart from its other assets a fund out of which the dividend is to be paid, such fund is held in trust for stockholders entitled to the dividend. In re Interborough Consol. Corporation, 2 Cir., 288 F. 334, 341, certiorari denied sub nom. Porges v. Sheffield, 262 U.S. 752, 43 S.Ct. 700, 67 L.Ed. 1215; Staats v. Biograph Co., 2 Cir., 236 F. 454, 458, L.R.A.1917B, 728; In re Interborough Consol. Corporation, D.C.S.D.N.Y., 267 F. 914, 919. While the question is not free from doubt, we believe that the October 1934 deposit falls within this rule to the extent that dividend checks may be presented for payment out of the fund, notwithstanding the intermingling of interest and dividend checks in determining the amount of the deposit. Affirmance of the order in this respect will doubtless have little significance in actual dollars since holders of the checks are by the terms of the order to be barred unless their claims are presented by a date to be fixed by further order of the court, and such portion of the $17,910.17 as is not paid on dividend checks will become general assets of the Company.

The cause is remanded for modification of the order in conformity with this opinion.