In the Matter of the Accounting of EUGENE LOEFFLER, as Administrator of the Estate of MARY A. LOEFFLER, Deceased, Appellant. HENRY B. HEDDENDORF, Respondent.

Order and decree affirmed, with costs.

VAN VOORHIS, J. (dissenting). This appeal is by Eugene Loeffler, the son, administrator and sole distributee of Mary A. Loeffler, deceased, from an order directing him, as such administrator, to pay the sum of $13,563.02, with interest and costs, to his uncle, Henry B. Heddendorf, decedent's brother, and determining that a Totten trust account deposited by decedent of $3,060.48, is also the property of said Heddendorf. Heddendorf owned a small bar and grill, which he was unable to operate personally on account of illness. His sister, the decedent, managed it for him, mingling the receipts from this business with her own funds and paying its expenses out of her own bank account. A little more than a year before her death, she signed a paper dated December 21, 1946, stating: " I hold eleven thousand dollars which I want delivered to my brother Henry Heddendorf." Her indebtedness to her brother increased from $11,000 to $13,563.02, the amount mentioned in the decree, by the time of her death on February 8, 1948. This indebtedness from decedent to Heddendorf is undisputed. She died solvent; her gross estate was $54,594 consisting of real estate, mortgages and other personal property.

The controversy arises entirely from the Totten trust account of $3,060.48 which she opened January 28, 1946, in her name in trust for said Henry Heddendorf. It is undisputed that when this account was opened she owed more money to Heddendorf than the initial deposit by reason of her retention of receipts from his business, and that her indebtedness to him was at all times

greater than the balance in this trust account. The account passed to Hedden-dorf upon her death (*Matter of Totten*, 179 N. Y. 112).

The Surrogate has held that the creation of this Totten trust and its existence unrevoked at her death, establish that she made a gift to her brother of the avails of the account, which has been held to be his property in addition to his rightful claim as a creditor. This determination is based on the premise that a Totten trust necessarily imports a gift, a conclusion which appears to me to be erroneous.

The law does not presume a gift if any other explanation is open (*Leask* v. *Hoagland*, 144 App. Div. 138, revd. 205 N. Y. 171). A person asserting title by gift has the burden of proof (*Lynch* v. *Lyons*, 131 App. Div. 120, affd. 197 N. Y. 595; *Matter of Canfield*, 176 App. Div. 554). Gifts must be proven by clear and satisfactory evidence (*Matter of Van Alstyne*, 207 N. Y. 298; *Coutant* v. *Mason*, 221 N. Y. 49).

Ever since the Elizabethan statute against fraudulent conveyances, the courts have proceeded upon the precept that "'A man should be just before he is generous'" (Bigelow on Fraudulent Conveyances [1911 ed.], p. 78). People ordinarily meet their obligations to their creditors before making presents to them. A Totten trust has been characterized as a poor man's trust; but neither that nor other trusts necessaily arise from gifts. "The owner of property can create a trust for his creditors, either a trust of all his property for all his creditors or a trust of particular property for a particular creditor or group of creditors" (1 Scott on Trusts, § 126.1, pp. 645–646; *Sayer* v. *Wynkoop*, 248 N. Y. 54). That is particularly likely where, as here, the creditor gets the principal of the trust. She admitted in writing that she held $11,000 in 1946 for her brother's account, which later was increased. What is more natural than to believe, in Professor Scott's phrase, that she was "simply making the disposition as a convenient step toward the discharge of the debt" (§ 126.1, p. 647)? It is not to be presumed that she intended the Totten trust account as a gift in the presence of such an indebtedness; the presumption is the other way. The circumstance that decedent could make withdrawals from this account during her lifetime indicates no contrary intent, inasmuch as she was constantly disbursing money to defray the expenses of her brother's business from her own account anyway. She did not keep a separate bank account for his funds. She simply earmarked this Totten trust account with his name, knowing that she could disburse the balance as she did his other funds, and that the proceeds of the account would be certain to pass to him upon her death. She was familiar with Totten trusts, having made one for her nephew and another for appellant, her son, the amounts of which do not appear. She was accustomed to using that form as a vehicle for making transfers in case of death. The circumstance that she may have intended to make gifts to her nephew and her son through this medium, assuming that she was not liable to them for moneys had and received, does not signify that she intended to donate the account in suit to her brother, to whom she was always indebted for more than the balance in it. A Totten trust account, like other transfers of principal, imports a gift if there is no other reasonable explanation. Standing by itself, it does not import a gift where the depositor is indebted in the same or in a greater amount to the beneficiary. Indeed, a voluntary conveyance by one indebted at the time is presumptively fraudulent irrespective of insolvency (*Smith* v. *Reid*, 134 N. Y. 568, 575). Where one person transfers funds for the benefit of his creditor, regardless of the medium which may be employed in doing so, it seems to me that the presumption is of intention to be just before being

generous, as the law requires. The normal tendency is to recognize, in Chancellor KENT'S phrase, " that the claims of justice are prior to those of affection " (*Reade* v. *Livingston*, 3 Johns, ch. 481, p. 505).

Inasmuch as there is no evidence in this record tending to establish a gift to respondent except the existence of a Totten trust account, I think that, as in other situations, a gift is not presumed, and that the decree appealed from should be modified by deducting the amount of the said account from respondent's claim against the estate.

Peck, P. J., Glennon, Dore and Cohn, JJ., concur in decision; Van Voorhis, J., dissents and votes to modify by deducting the amount of said account from respondent's claim against the estate, in opinion.

Order and decree affirmed, with costs. No opinion.