UNITED STATES of America

v.

Andrew DeLILLO, Defendant.

No. 76 CR 138.

United States District Court,
E. D. New York.

Oct. 29, 1976.

U. S. Atty. David G. Trager, Brooklyn, N.
Y., for plaintiff; Fred Barlow, U. S. Dept.
of Justice, Brooklyn, N. Y., of counsel.

Williams, Connolly & Califano, Wash-
ington, D. C., for defendant; Raymond W.
Bergan, William E. McDaniels and Andrew
L. Lipps, Washington, D. C., of counsel.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

Andrew DeLillo has been indicted on twelve counts for violations of 18 U.S.C. § 664 (theft or embezzlement from employee benefit plan).[1] Contending that the facts charged do not constitute an offense under § 664, he has moved for dismissal. For the reasons set forth below, his motion is granted.

### I.

In determining the motion, we must assume the indictment's factual allegations to be true. *United States v. Sampson*, 371 U.S. 75, 76, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). These allegations can be summarized as follows.

The Pension and Retirement Fund of Local 138, 138A, and 138B of the International Union of Operating Engineers (the Union Fund) was, at all times here relevant, "an employee pension benefit plan" as defined in § 664. In September of 1972, the Union Fund sold its resort complex, Colonie Hill, to Colonie Hill, Ltd. (Colonie) pursuant to a contract executed the previous June. The contract provided for a purchase price of $18,800,000, $15,300,000 of which was payable in notes or bonds, secured by subordinated mortgages on the complex.

As to the remaining $3,500,000, the contract provided:

(1) that upon receipt of the deed, Colonie was to obtain a $3,500,000 first mortgage on the complex;

(2) that Colonie was to use the $3,500,000

(a) to discharge approximately $2,500,000 in debts previously incurred by the Union Fund in the complex's construction,

(b) to finance the construction of a clubhouse building on the land, and

(c) to cover certain costs incurred in the complex's management between the contract's signing and closing; and

(3) that "satisfaction of these obligations by Colonie * * * would constitute full payment of the said $3,500,000". No provision in the contract granted the Union Fund the right to receive any part of the $3,500,000, even if the entire amount was not ultimately needed to satisfy fully the obligations for which it was designated.[2]

After Colonie received the deed and the $3,500,000 first mortgage proceeds, defendant DeLillo, who was then Colonie's president,[3] on twelve separate days made payments (totalling almost $1,500,000) from the $3,500,000, in a manner inconsistent with those specified in the contract. Accordingly, the indictment charges in twelve separate counts, one for each day, that DeLillo

embezzled, stole, and unlawfully and willfully abstracted and converted, and caused to be embezzled, stolen and unlawfully and willfully abstracted and converted, to his own use and the use of others, moneys, funds, credits, property and other assets of the Fund of Local[s] 138 [, 138A, and 138B], and of a fund connected therewith * * *.

### II.

Conviction under 18 U.S.C. § 664 necessitates proof not only that a defendant has embezzled, stolen, or unlawfully and willfully abstracted or converted to his own

---

1. 18 U.S.C. § 664 states:

    Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

    As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

2. At this point, the court refers directly to the contract, which, for purposes of this memorandum, has been read as part of the indictment.

3. DeLillo was also at that time an officer and shareholder of Millbrook Enterprises, Inc., which owned Java Enterprises, Inc., which in turn owned Colonie.

use or to the use of another, moneys, funds, securities, premiums, credits, property or other assets but also that the misappropriated assets were those "of [an] employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith". While the indictment clearly suffices as to the first of these requirements of proof, it fails because of the second requirement, for given the circumstances alleged here, the Government cannot establish that the funds which DeLillo allegedly misappropriated constituted property of the Union Fund or "of a fund connected therewith". *Cf. United States v. Collins*, 464 F.2d 1163 (CA9 1972); *United States v. Alessio*, 439 F.2d 803 (CA1 1971).

Although the indictment does track the "fund connected therewith" language of § 664, the Government does not rely upon this language now. See, *e. g.*, Govt.'s memorandum of June 11, 1976, at 1, 2; Govt.'s memorandum of Oct. 12, 1976, at 1. Rather, relying upon *Duffy v. Colonie Hill, Ltd.*, Civil No. 72–15153 (N.Y.Sup.Ct., Jan. 30, 1973), *modified on other grounds*, 42 A.D.2d 774, 346 N.Y.S.2d 760 (2d Dep't 1973), the Government contends that the $3,500,000 became "property" of the Union Fund when Colonie received it directly from the first mortgage.

In *Duffy*, a state court civil action, the trustees of the Union Fund sought to compel Colonie to disburse the $3,500,000 in accordance with the terms of the contract. The New York Supreme Court for Suffolk County concluded that (1) under New York Lien Law §§ 70(5)(c) & (d) respectively, both Colonie and the Union Fund were accountable as statutory trustees of the $3,500,000 to certain of the Union Fund's creditors, and (2) Colonie was also a trustee by virtue of its contract with the Union Fund, see, *e. g.*, 1 *Restatement of Trusts*, § 14 f, at 46–47 & illust. 2 (2d ed 1959). The Government's reliance upon these conclusions is misplaced, however, since, even if valid, they fail to establish that the $3,500,-000 was property of the Union Fund within the meaning of 18 U.S.C. § 664.

Colonie's status under the contract as trustee of the allegedly misappropriated funds provides no support for the Government's position. Under New York law, the Union Fund still had no legal, equitable, or possessory interest in the money. As trustee, Colonie had legal title to it. Equitable title was in the trust's beneficiaries—the contractor-creditors of the Union Fund provided for in the contract. *In re Associated Gas & Electric Co.*, 137 F.2d 607 (CA2 1943); *Carl Byoir & Associates, Inc. v. Tsune-Chi Yu*, 112 F.2d 885 (CA2), *cert. denied*, 311 U.S. 699, 61 S.Ct. 138, 85 L.Ed. 453 (1940); *Sayer v. Wynkoop*, 248 N.Y. 54, 58, 161 N.E. 417 (1928); *Rogers Locomotive & Machine Works v. Kelly*, 88 N.Y. 234, 238 (1882); *Ehag Eisenbahnwerte Holding Aktiengesellschaft v. Banca Nationala a Romaniei*, 306 N.E. 242, 252, 117 N.E.2d 346 (1954) (dictum).

Colonie's status under New York's Lien Law as a statutory trustee of the $3,500,000 is of no help to the Government either. The Union Fund still had no legal, equitable, or possessory interest in the money. See New York Lien Law § 70(5)(c) (making Colonie trustee of the statutory trust) & § 71 (making the contractor-creditors of the Union Fund beneficiaries of the trust).

The third trust which, according to the court in *Duffy*, arose from the circumstances confronted by it then and this court now, was a statutory trust with the $3,500,000 as its *res*, the contractor-creditors of the Union Fund as its beneficiaries, and the Fund as its trustee. The existence of such a trust is questionable, however, since New York's Lien Law would appear to impose a trust only upon "funds received" by the Union Fund or upon its "rights of action for payment thereof". New York Lien Law § 70.

Even assuming, however, that the Union Fund was a statutory trustee of the money allegedly misappropriated by defendant, the Government nevertheless fails in its argument that this money constituted property of the Union Fund for the purposes of 18 U.S.C. § 664, for the Union Fund still would have had no equitable or possessory interest in the $3,500,000. Its status as "trustee" of

funds never held could at most be viewed as a statutory device to provide certain remedies to laborers, suppliers and contractors. To be sure, the Union Fund would have had legal title to the money, but the Fund's possession of such title would not by itself warrant the conclusion that the money was the Fund's property for purposes of criminal prosecution under § 664.

The insignificance here of the Union Fund's assumed legal title to the $3,500,000 becomes apparent when it is viewed in light of the offenses charged in the indictment: embezzlement, conversion, abstraction, and stealing.

■ "[E]mbezzlement is an offense against * * * beneficial ownership." Perkins, *Criminal Law* at 291 (2d ed 1969). See, *e. g.*, *People v. Gibson*, 218 N.Y. 70, 112 N.E. 730 (1916); *People v. Shears*, 158 App. Div. 577, 143 N.Y.S. 861, 863 (2d Dep't 1913); 1 Scott, *Trusts* § 12.7, at 126–27 (3d ed 1967). Thus, while the defendant may have embezzled property of the Union Fund's contractor-creditors (the beneficiaries of all three trusts identified by the *Duffy* court), he did not embezzle property of the Fund itself.

■ Unlawful and willful conversion constitutes either embezzlement or a lesser included offense. 2 Wharton, *Criminal Law and Procedure* § 513, at 188 (Anderson ed 1957); LaFave & Scott, *Criminal Law* § 89, at 648 (1972). Like embezzlement, therefore, conversion is not an offense against legal title. Thus, the defendant could not have unlawfully and willfully "converted" property of the Union Fund.

■ Nor could the defendant have unlawfully and willfully "abstracted" property of the Union Fund since abstraction is an offense against possession, not legal title, *United States v. Northway*, 120 U.S. 327, 334, 7 S.Ct. 580, 30 L.Ed. 664 (1887), *quoted with approval in United States v. Williams*, 478 F.2d 369, 373 (CA4 1973).

■ And finally, stealing is also an offense against possession, except where by statute it has been defined to also include conduct which transgresses only beneficial

ownership. *Morissette v. United States*, 342 U.S. 246, 271, 72 S.Ct. 240, 96 L.Ed. 288 (1951); *United States v. Barlow*, 152 U.S. App.D.C. 336, 470 F.2d 1245, 1251 (1972); *Bennett v. United States*, 399 F.2d 740, 743 (CA9 1968); *Fowler v. United States*, 273 F. 15, 17 (CA9 1921); *Kambeitz v. United States*, 262 F. 378, 380 (CA2 1919); *Couture v. United States*, 256 F. 525, 526 (CA8 1919); *see also United States v. Northway*, 120 U.S. 327, 335, 7 S.Ct. 580, 30 L.Ed. 664 (1887); *United States v. Pruitt*, 446 F.2d 513, 514–15 (CA6 1971). In either case, the defendant could not have "stolen" property of the Union Fund, since the Fund had neither a possessory nor a beneficial interest in the $3,500,000. *Couture v. United States*, 256 F. at 526–27.

The Union Fund clearly stood to suffer from interference with the proper disposition of the assets of the trusts, and it may well be that the transactions described in the indictment offended criminal statutes, both state and federal. Nevertheless, defendant's alleged misappropriation of part of the $3,500,000 mortgage proceeds could not have constituted embezzlement, conversion, abstraction, or stealing of property of the Union Fund, as required by 18 U.S.C. § 664. Defendant could not have "embezzled" or "converted" property of the Union Fund since the Union Fund had no beneficial interest in the $3,500,000. He could not have "abstracted" property of the Union Fund since it had no possessory interest in the money. And he could not have "stolen" property of the Union Fund since it had neither a possessory nor a beneficial interest in the money.

Accordingly, the indictment must be dismissed.

SO ORDERED.