### In re MICRO–ACOUSTICS CORP., Debtor.

**Bankruptcy No. 82 B 20245.**

United States Bankruptcy Court, S.D. New York.

Nov. 2, 1983.

Reich & Reich, White Plains, N.Y., for Micro-Acoustics Corp.

Bartels, Pykett & Aronwald, White Plains, N.Y., for Sanford Drelinger.

Charles H. Weintraub, White Plains, N.Y., for Creditors' Committee.

## DECISION ON OBJECTIONS TO CONFIRMATION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

An allegedly "frozen out" shareholder of the Chapter 11 debtor, Micro-Acoustics,

Corp., whose shares the debtor corporation elected to repurchase pursuant to state law, filed a claim which includes the value of such shares and then objected to confirmation of the debtor's plan which provides that such claim should be subordinated to those of the general unsecured creditors.

## FINDINGS OF FACT

1. At the time of the filing of the corporate debtor's petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174, on April 27, 1982, the objectant, Sanford Drelinger, was the owner of thirty-five percent of the issued and outstanding shares of the debtor corporation. The debtor's filed schedules reflect this status.

2. The debtor is a corporation organized in 1970 under the law of New York State by Arnold Schwartz and the objectant, Sanford Drelinger. The company designed and sold audio components and related products.

3. In December, 1980, the objectant, Sanford Drelinger, commenced a special proceeding in the New York Supreme Court, Westchester County, pursuant to Section 1104–a of the New York Business Corporation Law to dissolve the debtor corporation.

4. In April, 1981, the debtor corporation elected to repurchase the objectant's shares of the debtor's stock at their fair value and upon such terms and conditions as might be approved by the New York Supreme Court, Westchester County, in accordance with Sections 1118(a) and (b) of the New York Business Corporation Law.

5. Thereafter, by an order to show cause, dated February 26, 1982, the objectant sought an order directing the debtor to file a bond in the amount of $700,000, which amount he alleged to be the value of his shares. The debtor opposed the order on various grounds, including the charge that the objectant inflated his valuation of the debtor's shares.

6. No decision was rendered by the New York Supreme Court fixing the valuation of the shares of the debtor as of April 27, 1982, when the debtor filed its Chapter 11 petition with this court.

7. The objectant, Sanford Drelinger, also had pending at the time the Chapter 11 petition was filed an action against the debtor and others for monetary damages. The objectant claims that $63,000 is due him for lost salary, benefits and emoluments because of his alleged wrongful discharge by the debtor.

8. In May, 1982, the objectant filed a proof of claim, setting forth three separate items:

a. The sum of $3775 for a loan from the objectant to the debtor. This item is not disputed by the debtor and is recognized as an unsecured claim.

b. The sum of $63,233 for lost salary benefits and emoluments resulting from the alleged wrongful discharge of the objectant by the debtor.

c. The sum of $700,000 as the fair value of the objectant's thirty-five percent interest as a stockholder of the debtor, which stock interest the corporation elected to repurchase from the objectant in the dissolution proceeding commenced by the objectant. This portion of the claim is disputed.

9. The debtor's plan of reorganization, after providing for secured claims, administration expenses, priority claims, and general unsecured claims in the first eight categories, created a separate class (class IX) for the objectant's $63,000 claim for wrongful discharge and $700,000 for the value of his stock which the debtor elected to repurchase. The $63,000 and the $700,000 claims were made subordinate to the classes containing general unsecured creditors. The last class in the plan of reorganization (class X) deals with the interests of the holders of common stock of the debtor.

10. The debtor supports its subordinated classification for the objectant's $63,000 and $700,000 claims on the ground that the objectant is a shareholder of the debtor corporation, notwithstanding his noninvolvement in the affairs of the corporation for almost two years. Hence the debtor maintains that the objectant's $63,000 and $700,000

claims should be subordinated pursuant to Code § 510(c)(1)[1] because they arise from his status as a shareholder, and that the Bankruptcy Court should "see that injustice or unfairness is not done in administration of the bankrupt estate ... especially ... when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder." *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1929).

11. The objectant reasons that his filed claim constitutes prima facie evidence of the validity and amount of the claim, as provided in Bankruptcy Rule 3001(f).[2]

## DISCUSSION

■ The objectant, Sanford Drelinger, argues that subordination of his claim for equitable reasons is unwarranted because his claim is contractual and not *qua* shareholder. Hence, he concludes that his claim must be treated *pari passu* with the claims of the other unsecured general creditors. There is no dispute that the objectant's $3775 loan to the debtor is an unsecured claim and should not be subordinated. Similarly, the objectant's $63,233 claim for wrongful discharge is entitled to prima facie validity pursuant to Bankruptcy Rule 3001(f), pending a determination of the debtor's objection to this claim. Therefore, this claim should not now be subordinated merely because Sanford Drelinger is also a shareholder of the debtor. There is no compelling reason why a shareholder should be classified any differently from other unsecured creditors when the shareholder's claim relates to matters other than reimbursement for the loss of the investment in the equity of the corporate debtor. A shareholder's unsecured claim against a corporate debtor, whether for goods sold, bona fide loans (as distinguished from capital contributions) or wages due as an employee should not be subordinated by Code § 510(c)(1) to the claims of unsecured creditors absent a showing of inequitable conduct. *In re Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980); *In re Mobile Steel, Co.,* 563 F.2d 692, 699–700 (5th Cir.1977).

That the objectant has valued his shares at $700,000 (which figure is disputed by the debtor) is not an issue in this action with respect to Sanford Drelinger's objection to confirmation of the debtor's plan of reorganization. The disputed value will be resolved in connection with the debtor's objection to this claim. What is involved in this matter is whether the objectant's claim, arising out of the debtor's election to repurchase his thirty-five percent interest in the debtor's stock, regardless of its value, may be classified in the plan of reorganization as subordinated to the claims of unsecured creditors.

■ In scrutinizing claims submitted by stockholders in bankruptcy cases, courts must view with suspicion the temptation on the part of stockholders to lay aside their garb as equity owners and to assume the role of creditors. *Newton National Bank v. Newbegin,* 74 F. 135, 140 (8th Cir.1896). The equities generally favor the conventional general creditors rather than stockholders, notwithstanding that a stockholder's claim is based solely on an alleged fraud that took place in the issuance of the stock. *In re Stirling Homex Corp.,* 579 F.2d 206, 213 (2d Cir.1978), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979). This is so because creditors rely upon the "equity cushion" created by the investment

---

1. § 510. Subordination.

   (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
   (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest....

2. Rule 3001. Proof of Claim

   (f) EVIDENTIARY EFFECT. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f), 11 U.S.C. (1983).

of stockholders and the failure to subordinate the stockholders to the claims of general creditors would defeat the reasonable expectations of both. Moreover, as noted in the *Stirling Homex Corp.* case, there is no reason why any part of the risk of loss should be shifted from the stockholders to the general creditors who did not have the benefit of potential profit from the enterprise as did the stockholders. *Id.* at 215. In the recent case of *In re Holiday Mart, Inc.,* 715 F.2d 430 (9th Cir.1983) (per curiam), the claims of debenture holders were subordinated to the claims of unsecured creditors even though no reliance by the unsecured creditors on the subordination clause was shown. Acknowledging the *Stirling Homex Corp.* case and other authorities, the court set forth the often quoted proposition that:

> "[E]quity prefers the claims of innocent general creditors over the claims of shareholders or subordinated creditors deceived by officers of the corporation."

*Id.* at 433 (quoting *Federal Deposit Insurance Corp. v. American Bank Trust Shares, Inc.,* 412 F.Supp. 302, 308 (D.S.C.1976), *vacated on other grounds,* 558 F.2d 711 (4th Cir.1977).

A claim arising under the corporate stock repurchase agreement was involved in *In re Flying Mailmen Service, Inc.,* 539 F.2d 866 (2d Cir.1976). In the course of a state court litigation, an individual shareholder and the debtor corporation entered into an agreement whereby the shareholder's stock would be repurchased by the debtor corporation. The agreement gave the shareholder, as security for the payment of the balance of the repurchase agreement, a security interest in all of the assets owned by the debtor corporation. The shareholder thereafter filed a financing statement pursuant to New York's U.C.C. § 9–403. The financing statement did not state that the agreement secured was, in part, a repurchase of the corporation's stock. Subsequently, the debtor corporation filed a petition under Chapter XI of the former Bankruptcy Act. The Chapter XI case aborted and the debtor was adjudicated a bankrupt. The bankruptcy court refused to enforce the repur-

chase agreement or the security interest created by it, notwithstanding the U.C.C. filing, because under New York law, an insolvent corporation may not purchase its own stock. Therefore, the shareholder was treated as an unsecured creditor subordinated to the claims of *all* general creditors. The district Court affirmed the denial of the shareholder's secured claim, but remanded the case to allow the bankruptcy court to determine the date of the corporation's insolvency. *In re Flying Mailmen Service,* 402 F.Supp. 790 (S.D.N.Y.1975). The Second Circuit Court of Appeals affirmed the district court's ruling that the security agreement was unenforceable in priority to the claims of subsequent creditors. The second circuit agreed that the notice obtained from filing a U.C.C. Financing Statement was not sufficient notice to subordinate subsequent creditors to a lien securing a stock repurchase agreement that is unenforceable against an insolvent corporation under state law. Thus, without the benefit of the status of a secured creditor under the security agreement the shareholder's claim under the repurchase agreement was subordinated to the claims of unsecured creditors and subject to being stricken entirely if it were found that the agreement was entered into at a time when the repurchasing corporation was insolvent.

■ In the instant case, the reorganization plan itself designates the objectant's claim arising out of the debtor's repurchase election as a separate class and subordinate to the claims of unsecured creditors. The debtor's authority to designate separate classes in a plan of reorganization is derived from Code § 1123(a)(1) which provides:

> § 1123. Contents of plan.
>
> (a) A plan shall—
>
> (1) designate, subject to section 1122 of this title, classes of claims other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(6) of this title and classes of interests.

11 U.S.C. § 1123(a)(1) (1982).

The debtor did not place the objectant's claim as a shareholder in the same class as

unsecured creditors because there is a difference in the nature of their claims, as recognized in the application of the absolute priority rule. Pursuant to Code § 1129(b)(1), a nonconsenting impaired class triggers the invocation of this rule, in that confirmation of the plan may be achieved only if the "plan be fair and equitable with respect to a class . . . ." Under this rule, no class may receive anything of value until senior classes have received full compensation for the value of their claims. As stated in the *Stirling Homex Corp.* case:

> Finally, after all creditors have been paid, provision may be made for stockholders. When the debtor is insolvent, the stockholders, as such, received nothing.

579 F.2d at 211 (citations omitted).

The debtor relies upon Code § 510(c)(1) as authority for subordinating the objectant's claim to those of the general unsecured creditors. This section provides:

§ 510. Subordination.

. . . . .

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

Although Code § 510(c)(1) is consistent with the debtor's position, it is inapplicable for the simple reason that the debtor has already incorporated the principle of equitable subordination in its plan by placing the objectant's $700,000 stock repurchase claim in a class inferior to that of the unsecured creditors. Code § 510(c) states that "the court" may subordinate. In this case, the debtor has already done the subordinating. The objection to confirmation filed by the objecting stockholder must be determined in the context of confirmation standards, as reflected in § 1129. The debtor has no need for Code § 510(c)(1) because the debtor's plan, which subordinates the objecting stockholder's $700,000 claim arising out of the debtor's election to repurchase the ob-

jectant's shares of the debtor's stock, does not offend the absolute priority rule, as reflected in the fair and equitable test in Code § 1129(b)(2).

## CONCLUSIONS OF LAW

1. The debtor's plan of reorganization may separately designate the objectant's $700,000 claim arising out of the debtor's stock repurchase election in a class that is subordinate to the claims of the debtor's general creditors.

2. The objection to confirmation filed with respect to the debtor's subordination of the objectant's $700,000 claim is dismissed.

SUBMIT ORDER on notice.