**In re DINO & ARTIE'S AUTOMATIC TRANSMISSION CO., INC., Debtor.**

**Bankruptcy No. 86 B 20219.**

United States Bankruptcy Court, S.D. New York.

Dec. 18, 1986.

Reich & Reich, White Plains, N.Y., for debtor, John J. Philbin, of counsel.

Edward I. Sumber, P.C., Carmel, N.Y., for Dorothy Pinori, Ronald K. Friedman, of counsel.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Dorothy Pinori, a secured creditor in this Chapter 11 case, has moved pursuant to 11 U.S.C. § 362(d) to vacate the automatic stay so that she might proceed with her state court foreclosure action against an unimproved parcel of land owned by the debtor, Dino & Artie's Automatic Transmission Co., Inc. The debtor seeks the benefit of the automatic stay in order to object to Mrs. Pinori's claim while the property in question remains in the estate. The debtor contends that Mrs. Pinori's secured claim should be subordinated to the general claims of unsecured creditors because it arose as a result of a shareholders' buyback agreement. The debtor also maintains that its obligation under the shareholders' agreement to buy back the shares owned by Mrs. Pinori's late husband, who had been a shareholder of the debtor when he died, should not be honored because N.Y.B.C.L. § 513 prohibits any buy-back payments when the corporate debtor is insolvent.

### FINDINGS OF FACT

1. On May 12, 1986, the debtor, Dino & Artie's Automatic Transmission Co., Inc. filed with this court its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code.

2. The debtor is engaged in the business of repairing automatic transmissions and engine parts of motor vehicles, having its principal place of business on real estate which it owns in Croton Falls, Westchester County, New York. The debtor also owns approximately three and one-third acres of unimproved real estate in the Town of Carmel, Putnam County, New York. Mrs. Pinori's motion for relief from the stay relates to her mortgage interest in the undeveloped property in the Town of Carmel,

although her mortgage also extends to the debtor's Croton Falls property.

3. In April of 1979, Mrs. Pinori's late husband, Arthur Pinori, was president and treasurer of the debtor and the owner of 90 shares of the debtor's common stock. The debtor's current president, Dino Magaletto, was then vice president and secretary. Dino Magaletto also owned 90 shares of the debtor's common stock. They entered into a shareholders' agreement dated April 24, 1979, which provided in part, that upon the death of either shareholder the debtor corporation would purchase the decedent's share of stock for a purchase price and in a manner provided for in the agreement. The debtor corporation was to obtain insurance policies on the lives of the shareholders so that the proceeds from the policy could fund the buy-back obligation.

4. In October of 1979, Arthur Pinori died, thereafter the Estate of Arthur Pinori entered into negotiations with the debtor with respect to the debtor's obligation to purchase the decedent's stock pursuant to the terms of the shareholders' agreement. Apparently difficulties arose with regard to the debtor's having obtained insurance proceeds to fund completely the purchase of the late Arthur Pinori's stock in the debtor. Ultimately, Mrs. Pinori, as Executrix of the Estate of Arthur Pinori, agreed to accept a lower purchase price than called for under the shareholders' agreement and to grant more favorable terms of payment of the balance of the purchase price. The Estate of Arthur Pinori received $50,545.45 in insurance proceeds under the life insurance policy referred to in the shareholders' agreement as part of the purchase price of the shares of stock owned by her late husband. The balance of the purchase price amounted to $199,454.56. Mrs. Pinori, as Executrix of the Estate of Arthur Pinori, agreed to accept the sum of $175,000 in full satisfaction of all remaining obligations of the debtor with respect to the buy-back of the decedent's shares of the debtor's stock.

5. Pursuant to this agreement with Mrs. Pinori, as Executrix of the Estate of Arthur Pinori, the debtor executed and delivered to Mrs. Pinori its promissory note, dated November 19, 1980, in the sum of $175,000. To secure payment of this note, the debtor executed and delivered to the Estate of Arthur Pinori two mortgages, each dated November 19, 1980. One mortgage covered the debtor's principal place of business in Croton Falls and the other covered the debtor's undeveloped property in the Town of Carmel, which is the subject of Mrs. Pinori's instant motion for relief from the automatic stay. Both mortgages contain identical riders which refer to the debtor's promissory note, but which do not recite that the promissory note reflects the debtor's obligation to repurchase the stock, pursuant to the shareholders' 1979 buy-back agreement. The explanation for the mortgages is stated as follows:

17. This is a collateral mortgage intended to secure a certain obligation evidenced by promissory note of Dino & Artie's Automatic Transmission Company, Inc., in favor of the Estate of Arthur Pinori, deceased, of even date herewith.
18. This collateral mortgage has been given pursuant to the terms and provisions of a certain agreement between the parties dated the 15th day of August, 1980, and shall be construed in accordance therewith.

6. Mrs. Pinori succeeded to the rights of the Estate of Arthur Pinori. The debtor currently owes to Mrs. Pinori, pursuant to its note and mortgages, the principal balance of $134,615.09, as of November 15, 1985, together with accrued interest. The debtor has made no post-petition payments to Mrs. Pinori.

7. The debtor's unimproved property in the Town of Carmel is encumbered by three mortgages. A first mortgage is held by Citibank, N.A. in the principal amount of $100,000. Mrs. Pinori holds a second mortgage against this property in the amount of $134,615.09, exclusive of accrued interest. A third mortgage held by a Mary Krawec is approximately $140,000, according to the testimony of the debtor's president, Dino Magaletto. In addition to these mortgage liens, the 1984/85 and

1985/86 Carmel School taxes and the 1985 and 1986 County and Town taxes assessed against this property have not been paid and are liens against this real estate.

8. The total liens against the debtor's unimproved property in the Town of Carmel exceed $400,000.

9. Although the debtor's appraiser's report states that the unimproved property is worth $300,000, this opinion conflicts with the credible report and testimony of Mrs. Pinori's appraiser, who values the property at $200,000. This lower figure is based upon a realistic evaluation which took into consideration that the property is in a wet lands area and is not sound property on which to attempt to build and develop commercial property. It would be difficult to comply with environmental regulations and buildings constructed on wet lands property would tend to sink with time. Additionally, it is noted that no sewer hook-ups are permitted because the sewage system is at or over capacity. Accordingly, the appraised value of $200,000 is found to be credible and correct.

10. The debtor's president, Dino Magaletto, testified that the unimproved property in the Town of Carmel is needed in the debtor's business because occasionally the debtor parks busses and cars on this vacant land while awaiting repair. This potential use seems to be somewhat farfetched in light of the fact that the debtor's business is not located in the Town of Carmel, but in Croton Falls.

11. The facts establish that the debtor lacks equity in its unimproved property located in the Town of Carmel and such property is not necessary to an effective reorganization of the debtor.

12. There was no evidence that the debtor's liabilities exceeded its assets in April of 1979 when the shareholders entered into the buy-back agreement, or in November of 1980, when the debtor issued its promissory note to the Estate of Arthur Pinori and delivered two mortgages to secure the debtor's obligation to pay a reduced sum of $175,000 in order to repurchase the decedent's shares. However, the debtor's Chapter 11 petition reflects that when it was filed on May 12, 1986, the debtor's total assets amounted to approximately $1,125,000 and its total liabilities were approximately $1,250,000. Thus, the debtor was insolvent when it filed its Chapter 11 petition and there is no evidence to rebut the presumption that it continues to remain insolvent.

DISCUSSION

It is clear that the debtor in this Chapter 11 case does not have an equity in its unimproved property in the Town of Carmel and that such property is not necessary to its effective reorganization. However, the debtor disputes Mrs. Pinori's right to assert her second mortgage status against the unsecured creditors in this case. The debtor contends that not only does Mrs. Pinori not have a lien, but that her claim should be subordinated to those of the general unsecured creditors because it arose as a result of the debtor's obligation to repurchase its stock from her late husband, who had been the president and a shareholder of the debtor when he died. Therefore, the debtor maintains that Mrs. Pinori should not be permitted to foreclose on the unimproved property and remove it from this estate to the detriment of the unsecured creditors.

Generally, extraneous issues, which are usually in the form of affirmative defenses or counterclaims are not entertained in the context of a motion for relief from the automatic stay and are tried separately because:

the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although relevant to the question of the amount of the debt concern largely collateral or unrelated matters....

S.Rep. No. 989, 95th Cong., 2d Sess. 55, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5841. *Accord, Johnson v. Righetti (In re Johnson),* 756 F.2d 738 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *Bialac v. Harsh Investment Corporation (In re Bialac)* 694 F.2d 625 (9th Cir.1982); *Vale Mills Corporation v. Gellert (In re Gellert),* 55 B.R. 970 (Bankr.D.N.H.1985); *Cheshire County Savings Bank v. Pappas (In re Pappas),* 55 B.R. 658 (Bankr.D.Mass. 1985). However, when the debtor's defense to a motion for relief from the automatic stay contests the validity of the creditor's lien, as distinguished from the amount of the lien, the court should entertain this issue because it goes to the heart of the creditor's interest in the property. *Bialac v. Harsh Investment Corporation (In re Bialac),* 694 F.2d at 627; *Vale Mills Corporation v. Gellert (In re Gellert),* 55 B.R. at 974–975; *Cheshire County Savings Bank v. Pappas, (In re Pappas),* 55 B.R. at 660–661. This is so because 11 U.S.C. § 362(d) expressly provides that relief from the automatic stay with respect to property of the estate may be sought by "a party in interest." If the moving creditor does not have a lien on the property in question, it follows that the creditor is not "a party in interest" as to such property.

## VALIDITY OF THE LIEN

Section 513(a) of the New York Business Corporation Law declares that:

A corporation, subject to any instructions contained in its certificate of incorporation, may purchase its own shares, or redeem its redeemable shares, out of surplus *except when currently the corporation is insolvent or would thereby be made insolvent.*

(Emphasis added). This statutory provision reinforces the basic rule that the equities generally favor the conventional general creditors rather than stockholders or former stockholders. *Jezarian v. Raichle (In re Stirling Homex Corp.),* 579 F.2d 206, 213 (2d Cir.1978), *cert. denied* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979). In the instant case, the debtor corporation

was obligated under a shareholders' buyback agreement to repurchase the shares of its deceased president. This obligation was restructured the year after the decedent's death whereby the shareholder's widow was given a promissory note for a reduced amount and two mortgages on the debtor's real estate to secure the repurchase obligation reflected in the promissory note. There was no recitation in the mortgages or in the riders to the mortgages that the mortgages secured a stock repurchase obligation of the debtor corporation. The debtor corporation is now insolvent so that any payment to the deceased shareholder's widow would not come out of surplus and would adversely affect the interests of the debtor's general unsecured creditors.

The promissory note and mortgage in question were issued by the debtor corporation to the deceased shareholder's widow one year after the debtor entered into the shareholder's agreement to repurchase the stock of a deceased shareholder. Thus, the note and mortgage were not issued directly to a shareholder to secure the debtor's obligation to repurchase the shareholder's stock. However, the result is the same because the mortgage serves to collateralize an obligation arising under a corporate stock repurchase agreement.

A claim arising under a corporate stock repurchase agreement was involved in *Gold v. Lippman (In re Flying Mailmen Service, Inc.),* 539 F.2d 866 (2d Cir.1976). In the course of a state court litigation, an individual shareholder and the debtor corporation entered into an agreement whereby the shareholder's stock would be repurchased by the debtor corporation. The agreement gave the shareholder, as security for the payment of the balance of the repurchase agreement, a security interest in all of the assets owned by the debtor corporation. The shareholder thereafter filed a financing statement pursuant to N.Y.U.C.C. § 9–403. The financing statement did not state that the agreement secured was, in part, a repurchase of the corporation's stock. Subsequently, the

debtor corporation filed a petition under Chapter XI of the former Bankruptcy Act. The Chapter XI case aborted and the debtor was adjudicated a bankrupt. The bankruptcy court refused to enforce the repurchase agreement or the security interest created by it, notwithstanding the U.C.C. filing, because under New York law, an insolvent corporation may not purchase its own stock. Therefore, the shareholder was treated as an unsecured creditor subordinated to the claims of *all* general creditors. The district court affirmed the denial of the shareholder's secured claim, but remanded the case to allow the bankruptcy court to determine the date of the corporation's insolvency. *Gold v. Lippman (In re Flying Mailmen Service)*, 402 F.Supp. 790 (S.D.N.Y.1975). The Second Circuit Court of Appeals affirmed the district court's ruling that the security agreement was unenforceable in priority to the claims of subsequent creditors. The Second Circuit agreed that the notice obtained from filing a U.C.C. Financing Statement was not sufficient notice to subordinate subsequent creditors to a lien securing a stock repurchase agreement that would be unenforceable against an insolvent corporation under state law.

In the instant case, general unsecured creditors may disregard a mortgage lien which was given by the debtor corporation to secure a stock repurchase agreement that is now unenforceable against this insolvent debtor corporation in accordance with Section 513(a) of the New York Business Corporation Law. Because the underlying obligation is unenforceable, it follows that the mortgage, which was given to secure the repurchase obligation must also fall with it:

> If Washington Plate Glass has no power to pay for repurchased shares, it should make no difference that Reiner has perfected a security interest in the corporation's assets. The security interest falls with the underlying obligation. Any other result would permit evasion of the statutory rule restricting a corporation's power to repurchase its own shares. *Accord In re Flying Mailmen Service*, 539 F.2d 866, 870–72 (2d Cir.

1976) (Friendly, J.); *In re Bell Tone Records, Inc.*, 86 F.Supp. 806, 810 (D.N.J.1949).

*Reiner v. Washington Plate Glass Co., Inc. (In re Washington Plate Glass Co., Inc.)*, 711 F.2d 414, 417 (D.C.Cir.1983) (footnote omitted).

■ Not only should a mortgage lien be disregarded if it violates Section 513(a) of the New York Business Corporation Law, but the underlying claim arising out of an insolvent corporation's stock repurchase obligation must be subordinated in favor of the claims of the debtor corporation's general creditors in accordance with the principles of equitable subordination expressed in 11 U.S.C. § 510(c)(1). *La Grand Steel Products Co. v. Goldberg (In re Poole, McGonigle & Dick, Inc.)*, 796 F.2d 318, 323 (9th Cir.1986); *Liebowitz v. Columbia Packing Company (In re Columbia Packing Company)*, 56 B.R. 222 (D.Mass.1985); *In re Micro-Acoutics Corp.*, 34 B.R. 279 (Bankr.S.D.N.Y.1983). In the *Liebowitz* case, which is strikingly similar to the instant case, the debtor corporation entered into a prepetition stock repurchase agreement with its three shareholders, to be funded with the proceeds from life insurance policies on the lives of each of the shareholders. After the death of one of the shareholders, the debtor issued a promissory note to the estate of the deceased shareholder for the balance due under the repurchase agreement because the life insurance proceeds received were insufficient to cover the full repurchase price. The note was assigned to a family trust previously created by the deceased shareholder. The District Court sustained the Bankruptcy Court's ruling that the family trust's claim under the promissory note was equitably subordinated to the claims of the debtor corporation's general creditors because the debtor corporation was insolvent when the note became payable and when the family trust filed its proof of claim. This point was expressed by the District Court as follows:

> It is immaterial that Columbia Packing was solvent when it purchased the stock

from the Lang estate and that the repurchase Agreement was made in good faith. *See Matthews Bros. v. Pullen,* 268 F. 827, 828 (1st Cir.1920). What is essential is that a corporation have sufficient surplus to retire the stock at the time payment is made out of the corporate assets. *Robinson v. Wangemann,* 75 F.2d 756, 757–58 (5th Cir.1935). When a stockholder sells his stock to a corporation and receives cash and a promissory note from the corporation in return, that stockholder does not thereby become a debt creditor who stands on equal footing with trade or general creditors should the corporation become bankrupt. *Matthews Bros. v. Pullen,* 268 F. at 828. The underlying nature of the transaction survives, and the note remains an equity obligation. *Robinson v. Wangemann,* 75 F.2d at 757. A stockholder who accepts a note in payment for his stock assumes the risk that the corporation will be solvent when the note becomes due. *In Re Trimble Company,* 339 F.2d 838, 843 (3d Cir.1964).

*Liebowitz v. Columbia Packing Company (In re Columbia Packing Company),* 56 B.R. at 224.

In light of the fact that Mrs. Pinori's mortgage lien may not be enforced against this estate and that her claim is equitably subordinate to those of the general unsecured creditors, it follows that her motion for relief from the automatic stay, in order to foreclose upon her lien, must be denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

2. Mrs. Pinori has not sustained her burden of establishing that she is "a party in interest" within the meaning of 11 U.S.C. § 362(d) who is entitled to relief from the automatic stay with respect to the mortgage covering the debtor's unimproved property in the Town of Carmel, New York, which the debtor issued to her

to secure its stock repurchase obligation under the shareholders' buy-back agreement entered into in April of 1979.

3. Mrs. Pinori's motion for relief from the automatic stay is denied because her mortgage lien is unenforceable in accordance with the terms of N.Y.B.C.L. § 513(a).

SETTLE ORDER on notice.