In re ELJAY JRS., INC., Debtor.

Bruce D. SCHERLING, Trustee of Eljay Jrs., Inc., Plaintiff–Appellant,

v.

Joel S. EHRENKRANZ and Andrea Boles Mallas, Executors of the Estate of Louis J. Mallas, Defendant–Appellee.

No. 90 Civ. 1033 (MJL).

United States District Court, S.D. New York.

Jan. 8, 1991.

Scherling, Davidson & Rech, P.C., New York City by Gustav Rech, for plaintiff-appellant.

Skadden, Arps, Slate, Meagher & Flom, New York City by Michael L. Cook, Julie L. Miller, Diana S.C. Zeydel, for defendant-appellee Joel S. Ehrenkranz, Co–Executor of the Estate of Louis J. Mallas.

LOWE, District Judge.

Before this Court is the appeal of plaintiff-appellant, Bruce D. Scherling, bankruptcy trustee of Eljay Jrs., Inc. ("Trustee"), from an order of the Honorable Howard C. Buschman III, United States Bankruptcy Judge, dismissing a complaint filed by the Trustee which alleged that certain transfers made by plaintiff Eljay Jrs., Inc., ("Eljay") to the estate of defendant Louis J. Mallas ("Mallas Estate") were voidable under 11 U.S.C. §§ 544(b), 548 and 550(a). For the reasons stated below, we affirm the decision of the Bankruptcy Court.

## BACKGROUND

The Bankruptcy Court thoroughly reported the facts of the case. *See In re Eljay Jrs., Inc.*, 106 B.R. 775 (Bkrtcy.S.D. N.Y.1989). We summarize the facts applicable to the questions raised by appellant. In 1977 Eljay, Inc. was incorporated in New York and subsequently acquired a division of Lou Mallas, Inc. in exchange for a demand obligation in the principal amount of $2,000,000. Louis J. Mallas was a shareholder and officer of Eljay from the time of its incorporation. Eljay obtained two insurance policies from Phoenix Mutual Life Insurance Company ("Phoenix"), in the amounts of $1,500,000 and $500,000 on Mallas' life naming Eljay as the owner. Eljay assigned its rights and interests to Lou Mallas, Inc. as security for Eljay's obligation on the demand note. However, Eljay reserved the right to designate and change the beneficiary on the policies.

In 1980, Mallas and his fellow shareholders, Laurence Korman and Lee Blumenthal, executed a shareholder agreement ("Agreement") which provided *inter alia* for Eljay to repurchase shares held by the estate of any deceased shareholder. The Agreement provided that the proceeds of any life insurance policies receivable by Eljay on the death of a shareholder would be, "kept separate and apart from all other funds of the Corporation and … held … in trust," for the purpose of stock repurchase. The Agreement also guaranteed that if the value of the shares was less than the value of the policies, the entire proceeds of the insurance would be paid to the insured's estate as payment for the stock.

In 1983, Eljay purchased an additional life insurance policy on the life of Lou Mallas from Connecticut Mutual Life Insurance Company ("Connecticut") for the face amount of $400,000, with Eljay as the named owner and beneficiary. In July 1986, Lou Mallas, Inc., by letter to Phoenix, released its claim to any beneficiary inter-

est in the Phoenix policies. One month later Lou Mallas died.

It appears from the record that upon the death of Mallas Eljay attempted to retain the insurance proceeds from the policies. *See In re Eljay Jrs., Inc.*, 106 B.R. at 780. In November 1986, the Mallas Estate and Eljay settled their differences through an agreement whereby Eljay released its claim to the proceeds and the Mallas Estate loaned Eljay $1,000,000. Korman advised Phoenix and Connecticut by letter that Eljay released and assigned to the Mallas Estate its interest in the proceeds of the policies. Connecticut and Phoenix paid the proceeds to the Mallas Estate directly in November 1986. The Mallas Estate subsequently transferred Mallas' 33 shares of Eljay stock back to Eljay, Inc.

In January 1987, three months after the payment of the insurance proceeds to the Mallas Estate, Eljay filed a petition of bankruptcy under Chapter 11 of the Bankruptcy Code. The case was converted to Chapter 7 one year later. *In re Eljay Jrs., Inc.*, 106 B.R. at 777.

The question before the Bankruptcy Court was whether the transfer of the insurance proceeds from Eljay to the Mallas Estate was a fraudulent conveyance and therefore void for preference under § 547 of the Bankruptcy Code. 106 B.R. at 780. The Bankruptcy Court held that the payment made by a debtor corporation to the estate of a deceased shareholder of life insurance proceeds held in a business life insurance trust for the purpose of stock repurchase a) is not a transfer of property of the debtor as defined by the Bankruptcy Code, and b) does not violate New York State Business Corporation Law ("BCL") § 513(a) which provides for stock repurchase by a corporation through use of its corporate surplus. The Court also held that business life insurance trusts established to provide key-man insurance or for the purpose of stock repurchase are not governed by New York Estate Powers and Trust Law ("EPTL") § 13–3.3 which provides for designation of a trustee as beneficiary for the proceeds of life insurance policies. Finally, the Court held that while evidence of intent to form a *trust* must be unequivocal, once that burden has been satisfied a lesser showing of clear and convincing proof will suffice to show intent of the parties to form a *present trust.* After hearing evidence at trial the Bankruptcy Court found that the shareholders of Eljay did in fact establish a present trust in 1980 by written agreement holding as its *res* the proceeds of life insurance policies on the lives of each of the three shareholders owned by Eljay. The Court also found that Eljay was already insolvent at the time of the transfer of the insurance proceeds to the Mallas Estate.

Appellant Trustee presents three questions for review. *See* Brief of Plaintiff–Appellant Bruce D. Scherling, Trustee, at pp. 1–2. First, whether sufficient evidence was presented at trial for the Bankruptcy Court to find that an express trust was created in 1980. Second, whether the Bankruptcy Court erred in holding that New York Estate Powers and Trust Law § 13–3.3 does not govern business life insurance trusts. And finally, whether New York Business Corporation Law § 513 permits stock repurchase, despite the insolvency of the corporation at the time of repurchase, where no funds from surplus are used.

■ Jurisdiction for this appeal lies under 28 U.S.C. § 158(a). The applicable standard of review requires us to uphold the Bankruptcy Court's findings of fact unless "clearly erroneous," but permits *de novo* review of its conclusions of law. *In re O.P.M. Leasing Services, Inc.*, 79 B.R. 161 (S.D.N.Y.1987); Fed.R.B.R.P. 8013. Where appellant seeks review of a Bankruptcy Court's findings of fact on appeal, it carries the burden of proving that the findings are clearly erroneous. A showing that the Bankruptcy Court could have reached another conclusion on the evidence presented is not sufficient. *In re Ferkauf, Inc.* 56 B.R. 774, 775 (S.D.N.Y.1985); *In re R.N. Salem Corp.* 29 B.R. 424, 428 (S.D. Oh.1983); *In re Checkmate Stereo & Electronics Ltd.* 21 B.R. 402, 410 (E.D.N.Y. 1982).

In our analysis, we are further bound by the standard that where documents under review are unambiguous and complete, a decision as to the true nature of the transaction is a question of law which is fully reviewable on appeal. However, where documents at issue are ambiguous, the court's determination of the parties' unexplained intent is a finding of fact. *In re PCH Associates*, 60 B.R. 870 (S.D.N.Y. 1986); *Sun Oil Co. v. Commissioner*, 562 F.2d 258 (3rd Cir.1977) *cert. denied* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978).

## DISCUSSION

### I

The first question raised by appellant, concerning the sufficiency of the evidence presented at trial on the question of whether a "present trust" was created[1], requires a finding of fact. The Bankruptcy Court based its decision that a present trust was created in 1980, on its findings regarding the parties' intent, the circumstances surrounding creation of the agreement, and the economic substance of the transaction. Given the factual nature of these findings, we are bound by the "clearly erroneous" standard in reviewing this issue. *In re O.P.M. Leasing Services, Inc.*, 79 B.R. 161 (S.D.N.Y.1987).

■ Appellant argues that the mere mention of the word "trust" without more does not in fact create a trust. While appellant is correct in so noting, it is also well settled that there are no magic words required to create a trust as long as the elements of a trust are present. *Title Guarantee and Trust Co. v. Haven*, 214

N.Y. 468, 481, 108 N.E. 819, 822 (1915); *Sayer v. Wynkoop*, 248 N.Y. 54, 59, 161 N.E. 417, 418, *reh'g denied*, 248 N.Y. 591, 162 N.E. 537 (1928); Restatement (Second) of Trusts § 24(2). Generally, a trust involves three elements: a trustee, a beneficiary, and trust property. Restatement (Second) of Trusts § 2 (1959), Comment h. A court need not find all three elements to be present at the time of creation of the trust provided that an ascertainable trust property is then in existence. Restatement (Second) of Trusts § 2 (1959), Comments i, j, k. The Bankruptcy Court was satisfied by the evidence presented at trial that these requirements were met by the Agreement demonstrating an unequivocal intent on the part of the Eljay shareholders to create a trust.

■ Upon review of the record we find that the Bankruptcy Court's findings were not clearly erroneous. We agree with Judge Buschman that despite the awkward drafting of the Agreement, the record indicates an intent by the parties to create a present trust. The testimonial evidence presented at trial is, in our view, as persuasive on this point as on the question of the whether there was the necessary original intent to create a trust at all. *See In re Eljay Jrs., Inc.*, 106 B.R. at 787.[2] We therefore affirm the Bankruptcy Court's ruling as to the parties' intention to create a present trust in 1980.

### II

We turn then to the second issue raised by appellant, that of the Bankruptcy Court's finding that N.Y. Estate Powers and Trust Law ("EPTL") § 13–3.3 is inapplicable to the case at hand.[3] This statute requires establishment of a trust prior to

---

1. A manifestation of an intention to create a present trust gives rise to an immediately effective trust, whereas a trust *in futuro* does not arise until the occurrence of certain specified events. Restatement (second) of Trusts § 26; *See Also In re Eljay Jrs., Inc.*, 106 B.R. 775, 789.

2. Given our finding, it is not necessary for us to review the well-reasoned discussion below as to whether the evidentiary threshold for proving the intent to create a *present* trust, after a trust of some type has been established, is less rigorous than that required to prove the initial intent to form a trust.

3. Because the construction of the statute is important to the following discussion, we provide the entire section of N.Y. EPTL § 13–3.3:

   Designation of trustee to receive proceeds of thrift, savings, pension, retirement, death benefit, stock bonus and profit-sharing plans, systems or trusts, or life, group life, industrial life or accident and health insurance policies and of annuity, endowment and supplemental insurance contracts, and taxation thereof

   (a) The proceeds of thrift, savings, pension, retirement, death benefit, stock bonus and profit-sharing plans, systems or trusts, of

designation of the trustee and has been so construed by a New York appellate court. *Matter of Stein,* 131 A.D.2d 68, 520 N.Y. S.2d 157, appeal dismissed 72 N.Y.2d 840, 530 N.Y.S.2d 555, 526 N.E.2d 46 (1988). The Bankruptcy Court held that the Eljay trust's nature as a business life insurance trust placed it outside the ambit of the statute and that therefore Eljay's failure to designate a trustee in compliance with the requirements of the statute would not invalidate the trust. Appellant argues that even if the parties did intend to form a trust, they failed to comply with the statutory requirements laid out in that section and therefore the Eljay trust must be ruled invalid. While we agree with appellant that the Eljay trust failed to comply with the requirements of EPTL § 13–3.3(a)(1), we nevertheless find that the trust was valid for the reasons discussed hereinafter.

EPTL § 13–3.3(a) requires that a trust agreement be in existence prior to the des-

ignation of a trustee. The Bankruptcy Court expressly noted that this explicit requirement was only added to the statute by amendment in 1976. Prior to the amendment, the statute made no provision for any particular sequence of events in the creation of a qualified life insurance trust. As the court below recognized, the cases prior to the amendment made no distinction based on the timing of designation in determining the validity of trusts, provided that designation was made during the settlor's lifetime. *See e.g. Blanco v. Velez,* 295 N.Y. 224, 66 N.E.2d 171 (1946); *Hirsh v. Auer,* 146 N.Y. 13, 17, 40 N.E. 397, 398 (1895). (For extensive citations *see In re Eljay Jrs., Inc.,* 106 B.R. at 783).

However, in the single reported case which has addressed § 13–3.3 since its amendment, the New York State Appellate Division expressly and unequivocally held that the statute requires execution of a

life, group life, industrial life or accident and health insurance policies and of annuity, endowment and supplemental insurance contracts (hereinafter referred to as "proceeds") may be made payable to a trustee designated as beneficiary in the manner prescribed by this section and named as:

(1) Trustee under a trust agreement or declaration of trust in existence at the date of such designation, and identified in such designation, and such proceeds shall be paid to such trustee and be held and disposed of in accordance with the terms of such trust agreement or declaration of trust, including any amendments thereto, as they appear in writing on the date of the death of the insured, employee or participant. It shall not be necessary to the validity of any such trust agreement or declaration of trust that it have a trust corpus other than the right of the trustee as beneficiary to receive such proceeds.

(2) Trustee of a trust to be established by will, and upon qualification and issuance of letters of trusteeship such proceeds shall be payable to the trustee to be held and disposed of in accordance with the terms of such will as a testamentary trust. A designation which in substance names as such beneficiary the trustee under the will of the insured, employee or participant, shall be taken to refer to the will of such person actually admitted to probate, whether executed before or after the making of such designation.

(b) If no qualified trustee claims such proceeds from the insurer or other payor within eighteen months after the death of the

insured, employee or participant, or if satisfactory evidence is furnished to the insurer or other payor within such period showing that there is or will be no trustee to receive such proceeds, such proceeds shall be paid by the insurer or other payor to the personal representative or assigns of the insured, employee or participant, unless otherwise provided by agreement with the insurer or other payor during the lifetime of the insured, employee or participant.

(c) Except to the extent otherwise provided by the trust agreement, declaration of trust or will, proceeds received by the trustee shall not be subject to the debts of the insured, employee or participant, to any greater extent than if such proceeds were payable to the beneficiaries named in the trust, and for all purposes including transfer or estate tax purposes they shall not be deemed payable to or for the benefit of the estate of the insured, employee or participant.

(d) Proceeds so held in trust may be commingled with any other assets which may properly become part of such trust.

(e) Nothing in this section shall effect the validity of any designation heretofore made of the trustee of any trust established under a trust agreement or declaration of trust or by will.

(f) This section shall be construed as declaring the law as it existed prior to its enactment and not as modifying it.

trust instrument prior to designation of a trustee. *Matter of Stein*, 131 A.D.2d 68, 520 N.Y.S.2d 157, appeal dismissed 72 N.Y.2d 840, 530 N.Y.S.2d 555, 526 N.E.2d 46. In that case, the court invalidated the trust though only 20 days had elapsed between the designation of the trustee and the subsequent execution of the trust agreement. The New York court, in so ruling, gave the statute its literal reading.

Judge Buschman distinguished the instant case from *Stein*, essentially on its facts, by characterizing the *Stein* trust as one created by "an individual owning life insurance on his own life," 106 B.R. at 784, while viewing the Eljay trust as one "where the owner is not the person whose life is insured." *Id.* The Bankruptcy Court then posited that the purpose of the legislature in enacting EPTL § 13–3.3 was to clarify the status of life insurance trusts as non-testamentary in nature in order to enable greater flexibility in estate planning and compliance with federal estate taxation rules. In other words, Judge Buschman held the statute only applies to trusts established by individuals in their attempts to maximize the value of their estates to their dependent's and heirs upon their death. Thus, business life insurance trusts, such as the Eljay trust, which are set up by corporations to provide "key-man" insurance or for other business purposes would not fall within the ambit of the statute.[4]

■ We find the Bankruptcy Court's reading of the statute unsupported by the legislative history cited. This history makes no mention whatsoever of the distinction between policy owner and insured stressed by the court below. There appears to be no other code provision in New York addressing life insurance trusts or providing any alternate means of trustee designation for business life insurance trusts. And, due to the relatively recent appearance on the scene of this business planning tool, there is no common law rule which specifically addresses trustee designation for these trusts as a separate class. In the absence of any authority for an alternative rule, we cannot exempt such trusts from the only designation requirements set out at law in New York.[5]

---

4. We take notice of the Bankruptcy Court's discussion of business life insurance trusts and their relationship to key-man insurance. The business life insurance trust is a comparatively recent development having as its object the protection of a business against loss on the death of one of its owners or employees or the advancement of the business enterprise in some other way. Bogert, *Trusts and Trustees* § 253. These trusts are most commonly used to provide for creation of a fund which will secure the purchase of the interests of a stockholder in a corporation or a partner on his death. This enables the surviving stockholders to retain control of the corporation and maintain the business as a going concern while at the same time guaranteeing a reasonable sum to the estate of the deceased without having to sacrifice stock or liquidate assets in order to do so. *Id.*

A quite separate purpose of business life insurance trusts is the provision for the loss arising from the death of a key employee by securing a policy on the employee's life. The proceeds of such a policy become payable to the corporation as replacement for the value lost upon the death of the "key-man." *Id.*

While the bankruptcy court characterized the Eljay trust as a "key-man" insurance trust, the record does not support that conclusion. It does not appear that the stockholders of Eljay ever intended the proceeds of the life insurance policies to be paid to the corporation as com-

pensation for the lost services of Lou Mallas. As the testimony at trial suggests, the trust was established to provide funds for the purchase of stock from the estates of Mallas, Korman and Blumenthal in the event of their death, thus making provision both for control of the corporation and for support for the widows and heirs of the three men.

It appears that, at least in part, the Eljay trust had certain characteristics of estate planning. Certainly, the trust was not conceived as solely for the benefit of the corporation. The evidence presented at trial amply lays that possibility to rest. *See e.g.* the testimony of Mrs. Mallas: "[T]hese men would run the business and that on the insurance policies, the money would come to the family, to me. That would be how I would be taken care of." Record on Appeal Designated Document # 23 at 48 (No. 87 B 10094). Therefore, even if an argument might somehow be sustained in favor of treating business life insurance trusts differently from individual life insurance trusts in which the insured is also the policy owner, the facts of this case do not present us with a sufficient justification to venture into such uncharted waters.

5. We are bound in our review here by the clear standard that where an intermediate state court has ruled on a question of state law, absent a ruling by the highest state court, the federal courts are bound unless convinced by other

Moreover, we see no reason to look to the ownership of a life insurance policy for guidance in determining whether or not to apply EPTL § 13–3.3, since the statute contains no qualifications based on ownership of the instruments thereby regulated. The section's title begins "Designation of trustee ...," indicating that the purpose of the statute is to lay out the requirements for establishing a trust which holds as its corpus "... proceeds of thrift, savings, pension, retirement, death benefit, stock bonus and profit-sharing plans, systems or trusts, of life, group life, industrial life or accident and health insurance policies and of annuity, endowment and supplemental insurance contracts ..." EPTL § 13–3.3. The purpose of the section is further demonstrated by the clear language of subsection (a):

> (a) The proceeds of ... life ... insurance policies ... may be made payable to a trustee *designated as a beneficiary in the manner prescribed by this section* ... [emphasis added]

The subsection then describes two different means of designation, (1) trust agreements or declarations of trusts, and (2) wills. Each entails a unique procedure for successful designation. Nowhere is any distinction drawn between insurance policies owned by the employer and those owned by the insured.

The Bankruptcy Court interprets subsection (a)(2) as informing the entire section, reading it as strongly implying that the New York legislature only intended EPTL § 13–3.3 to govern individuals in their estate and tax planning activities. It appears to this Court, however, that subsections (a)(1) and (a)(2) are more appropriately read disjunctively as are the other subsections in the statute. We note that subsection (c) refers to "the trust agreement, declaration of trust *or* will," and subsection (e) is even more illustrative of the disjunctive intent where it refers to "a trust agreement or declaration of trust *or* ... will." (emphases added). Given this reading, we need only look to the requirements of subsection (a)(1), governing trust agreements or declarations of trust, to determine whether Eljay properly designated a trustee since subsection (a)(2) applies only to trusts established by wills.[6]

■ In assessing whether EPTL § 13–3.3 should be read as invalidating the Eljay trust, this Court is of the opinion that the permissive language of subsection (a), allowing payment of insurance proceeds to be made payable to a trustee designated as beneficiary, cannot be read as obligatory. This is made clear by subsection (b) which provides a remedy where no qualified trustee claims the proceeds from the insurer. The statute authorizes but does not require that a trustee be named as beneficiary on the policy, and failure to do so does not in itself invalidate a trust. *See* NY EPTL § 13–3.3(b) (quoted in full at note 3, *supra*).

As noted above, the requisite elements of a trust include the designation of a beneficiary and the designation of a trustee and the Agreement here provided for both of these. That Agreement named Eljay as both trustee for the proceeds of the policies and as their beneficiary so that it might fulfill the stock repurchase plan. The appellee persuasively argues that the purpose of designating a trustee as beneficiary of a life insurance policy is to restrict the insurance beneficiary's right to collect the proceeds under the insurance contract to his capacity as trustee, thereby prohibiting the insurance company from paying the proceeds to the beneficiary, individually. *See, e.g., Flack v. Prudential Ins. Co.,* 42 Misc.2d 512, 248 N.Y.S.2d 323 (Sup.Ct.

persuasive data that the highest court of the state would rule otherwise. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Cities Service Oil Co. v. Dunlap,* 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939); *Cooper v. American Airlines,* 149 F.2d 355 (2nd Cir.1945); *Krasnow v. National Airlines,* 228 F.2d 326 (2nd Cir.1955). Given the circumstances here, we do not find "other persuasive data" that the New York Court of Appeals would rule differently from the court in *Matter of Stein, supra.*

6. As a grammatical note, there is no article, neither "and" nor "or" to connect § 13–3.3(a)(1) with § 13–3.3(a)(2). Thus, the natural reading would be to interpret them as separate clauses. The similar construction of the other sections also supports this interpretation. *See supra* note 3.

Lewis County 1964). This purpose was here accomplished by the Agreement itself. No further designation on the face of the policy was necessary to effect Eljay's purpose.

That the policies were made payable directly to Eljay for its use in fulfilling the terms of the trust established in the Agreement may arguably have been imprudent.[7] As held in *Stein*, designation of a trustee as beneficiary prior to the execution of a trust agreement is precluded by EPTL § 13–3.3(a), but failure to name any trustee at all as beneficiary is not similarly problematic due to the saving clause contained in subsection (b). Therefore, we hold, that EPTL § 13–3.3(a) does not invalidate the Eljay trust. *See* N.Y. EPTL § 13–3.3(b) (quoted in full at note 3, *supra*).

Thus, on the question of the applicability of EPTL § 13–3.3 to this case, we reach the same result as Judge Buschman although on different grounds. While the Eljay trust's nature as a business life insurance trust does not remove it from the workings of the statute, in the absence of a qualified trustee under § 13–3.3(a), we read subsection (b), which instructs the insurer to pay insurance proceeds directly to the personal representative or assigns of the insured, as controlling. As this has already been accomplished in this case, no further action need be ordered.

## III

■ Finally, we reach the question of the effect of N.Y. Business Corporation Law ("BCL") § 513 on the outcome of this case. Section 513(a) permits *inter alia* a corporation to use funds in its surplus for the purpose of stock repurchase unless the corporation is insolvent at the time of repurchase or would thereby be rendered insolvent.[8] The Bankruptcy Court held that once the insurance proceeds became the subject of a valid *inter vivos* trust in 1980, they were no longer an asset of the corporation. Therefore, the 1986 transfer of the proceeds to the Mallas Estate was not a transfer of corporate property in violation of BCL § 513.

The Trustee argues that even if a valid trust is found, the insolvency of Eljay at the time of the transfer of the insurance proceeds to the Mallas Estate was impermissible under BCL § 513(a). Appellant's argument hinges on a reading of § 513(a) as the exclusive means of stock repurchase available at law in New York. Not only does the section's permissive language undermine appellant's interpretation, but a careful reading of § 513 discloses that an alternate means of stock repurchase is available in New York, namely, repurchase by means of stated capital under subsection (b).[9] Furthermore, nowhere in the statute is there language precluding repurchase by means of trust property not owned by the corporation.

Here, stock repurchase was neither accomplished through the use of Eljay's surplus nor with any other Eljay corporate

7. As demonstrated by the events which transpired on Lou Mallas' death, by not designating Eljay as the trustee beneficiary for the policies there was nothing to prevent Eljay's refusal to use the proceeds for the stock repurchase. Strict compliance with part (a)(1) of statute would have left no room for Eljay's initial refusal to pay Mallas the proceeds as required by the Agreement.

8. N.Y. BCL § 513 states in pertinent part:

   (a) A corporation, subject to any restrictions contained in its certificate of incorporation, may purchase its own shares, or redeem its redeemable shares, out of surplus except when currently the corporation is insolvent or would thereby be made insolvent.
   (b) A corporation may purchase its own shares out of stated capital except when cur-

rently the corporation is insolvent or would thereby be made insolvent ...

9. Stated capital is defined by New York Business Corporation Law as:

   [T]he sum of (A) the par value of all shares with par value that have been issued, (B) the amount of the consideration received for all shares without par value that have been issued, except such part of the consideration therefor as may have been allocated to surplus in a manner permitted by law, and (C) such amounts not included in clauses (A) and (B) as have been transferred to stated capital, whether upon the distribution of shares or otherwise, minus all reductions from such sums as have been effected in a manner permitted by law.
   N.Y. BCL § 102(12).

assets. Once created, the *res* of the trust was not the property of Eljay. Since the trust property was transferred in 1980 under the Agreement, no voidable transfer of Eljay property took place in 1986. Furthermore, the cases offered by the appellant in support of its contention do not address the issue of trust property as protected in bankruptcy but of secured transactions which seek to place the interests of shareholders ahead of unsecured creditors through the depletion of corporate assets. *See e.g. Matter of Flying Mailman Service, Inc.*, 539 F.2d 866 (2d Cir.1976). Of particular note is *In re Dino & Artie's Automatic Transmission*, 68 B.R. 264 (Bkrtcy.S.D.N.Y.1986), where the Bankruptcy Court in this district reviewed a stock repurchase agreement funded by insurance proceeds for validity under N.Y. BCL § 513(a). The insurance proceeds being inadequate to complete repurchase, the stockholder's widow was given two mortgage liens on properties owned by the corporation in order to secure the remainder of the repurchase obligation. The court held that, pursuant to N.Y. BCL § 513, upon the insolvency of the corporation, the mortgage liens had to be subordinated to the claims of unsecured creditors. Notably, while invalidating the widow's claim to the mortgage lien, due to the subsequent insolvency of the corporation, the court made no attempt to invalidate the payment of the insurance proceeds which had been held by the corporation for the purpose of stock repurchase since earlier solvent days. *See also, Liebowitz v. Columbia Packing Co.*, 56 B.R. 222 (D.Mass.1985), for a similar result.

We agree with the Bankruptcy Court that no transfer of corporate property was made in 1986 by the payment of the insurance proceeds out of the Eljay trust to Mrs. Mallas and that therefore, N.Y. BCL § 513 is inapplicable.

### CONCLUSION

In summary, we do not find adequate grounds for review of the evidentiary findings of Bankruptcy Court. Those findings were not clearly erroneous. Nor do we find it necessary to invalidate the Eljay trust, despite its failure to comply with N.Y. EPTL § 13–3.3(a)(1), because of the provision made for such noncompliance by § 13–3.3(b).[10] Finally, we uphold the Bankruptcy Court's decision that N.Y. BCL § 513 does not apply to this case since no corporate assets were used for repurchase of the stock from the Mallas Estate. Therefore, this Court denies appellant's request for reversal of the Order of the Bankruptcy Court and affirms that Court's dismissal of the complaint and judgment for the Mallas Estate.

It is so ordered.

---

10. While we reach the same result as the Bankruptcy Court in affirming the validity of the Eljay trust, it is this Court's opinion that N.Y. EPTL § 13–3.3 applies to life insurance trusts generally, including business life insurance trusts. In this regard, we differ from the Bankruptcy Court in our approach to determining the validity of the Eljay trust.